BALLENGER ET AL. *v.* McMILLAN ET AL.

[No. 166, October Term, 1953.]

*Decided June 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William H. Gorman, II,* with whom were *Niles, Barton, Yost and Dankmeyer,* on the brief, for appellants.

*Frederick J. Singley, Jr.,* with whom were *Hinkley and Singley,* on the brief, for appellees.

*Venable, Baetjer & Howard,* Solicitors for Trustee, on the joint appendix.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree distributing the corpus of a trust estate.

On July 26, 1912, William H. Gorman, the grantor, executed a deed to the Safe Deposit & Trust Company of Baltimore, assigning to it 302 shares of capital stock of the Cumberland Coal Company of Baltimore City to

be held in trust, certain payments to be made to the grantor during his life. Mr. Gorman died on July 7, 1915. The pertinent parts of the deed with respect to the trust estate after the death of William H. Gorman follow. (1) After the death of the Settlor, one-third of the income was to be paid to Ada Rogers Gorman, wife of the Settlor; the remaining income (and all of the income after the death of Ada Rogers Gorman) was to be paid to the children of William H. Gorman from time to time surviving, the share of any deceased child "to be paid to the children and descendants of such deceased child per stirpes"; (2) With respect to corpus the Deed provided that "the trust is to continue during the lives of all the children of the said William H. Gorman, and upon the death of the last surviving child of the said William H. Gorman the trust shall terminate *and the principal of the trust estate shall go to all the descendants of the said William H. Gorman then living, to be divided among them per stirpes and not per capita * * *.*" (Italics supplied).

The facts as stated in the brief of the appellants are adopted by the appellees and are substantially as follows. The grantor was survived by his second wife, Ada Rogers Gorman, who died on June 21, 1949. The grantor's last surviving child, Elizabeth Gorman McMillan, died on March 17, 1953, upon which event the principal of the trust estate became distributable "to all the descendants of the said William H. Gorman then living, to be divided among them per stirpes and not per capita * * *."

The grantor had four children, Douglas Gorman, Albert Gorman, Nora Clark Gorman Ballenger, and Elizabeth Gorman McMillan. At the death of the last surviving child, Elizabeth Gorman McMillan, the following were the living descendants (exclusive of great-grandchildren with living parents) : (a) Douglas Gorman's children (hereinafter called "Clan Douglas") : Douglas Gorman, Jr., Edmund N. Gorman, Ogden C. Gorman, Kenneth A. Gorman, and Gwendolen Nash Gorman, II, infant, the sole surviving child of Arthur P. Gorman,

II, who was killed in World War II in 1944; (b) Elizabeth Gorman McMillan's children (hereinafter called "Clan McMillan") : Carolee McMillan Allen, Anne Goddard McMillan Findlay, William Gorman McMillan, Gaines McMillan; (c) Albert Gorman's children (hereinafter called "Clan Albert") : Sallie Gorman Smith, William H. Gorman, II, Albert Gorman, Jr.; (d) Nora Clark Gorman Ballenger's child and grandchildren (hereinafter called "Clan Ballenger") : Edgar G. Ballenger (child), Marshall G. Foster, Edgar G. B. Foster (the latter two being children of Mary Clark Ballenger Foster, a deceased daughter of Nora Ballenger).

As each of the children of the grantor died, the share of the income of such deceased child, in accordance with the stirpital direction in the deed, was paid to the clans. As a result, at the death of the grantor's last surviving child, Elizabeth Gorman McMillan, the income was being distributed to the grandchildren on the basis of one-fourth to each of the clans and within the respective clans as follows: Clan Douglas, $\frac{1}{5}$ of $\frac{1}{4}$—$\frac{1}{20}$; Clan McMillan, $\frac{1}{4}$ of $\frac{1}{4}$—$\frac{1}{16}$; Clan Albert, $\frac{1}{3}$ of $\frac{1}{4}$—$\frac{1}{12}$; Clan Ballenger, $\frac{1}{2}$ of $\frac{1}{4}$—$\frac{1}{8}$ as to each grandchild and $\frac{1}{2}$ of $\frac{1}{8}$—$\frac{1}{16}$ as to each great-grandchild. Upon the death of Elizabeth Gorman McMillan, the Trustee, Safe Deposit & Trust Company of Baltimore, one of the appellees, filed a bill of complaint asking for direction from the chancellor as to the proper method of distribution of the income and principal of the trust estate. The appellants, the members of Clan Ballenger and the members of Clan Albert, by answer contended that the grantor contemplated a stirpital distribution in which the children of the grantor would comprise the "stock" or stirpes and, therefore, the proper construction of the limitation in remainder required the corpus to be divided into four parts, one part of which would pass to the children and descendants of each of the four children of William H. Gorman. On the other hand, Clan Douglas by answer contended that the grandchildren of the grantor constituted the stirpes or stock and that division

of the corpus should be into fourteen equal parts. Clan McMillan answered in proper person and took no position with respect to the distribution, although it would have been to their financial advantage to have taken the same position as taken by Clan Douglas.

The chancellor by decree decided with the contention of the appellees, that the grandchildren of the grantor constituted the stock or stirpes and that the division of the corpus should be into fourteen equal parts. From that decree the appellants appeal.

The question, therefore, before this Court is whether the phrase "shall go to all the descendants of the said William H. Gorman then living, to be divided among them per stirpes and not per capita, * * *" means that the children of the grantor are the stocks or stirpes, or whether it means that the grandchildren of the grantor are the stocks or stirpes.

The chancellor based his decision on the case of *Patchell v. Groom*, 185 Md. 10, 43 A. 2d 32. In that case the will provided: "At the death of the last survivor of my children . . . the trust . . . shall cease and determine, and thereupon I do hereby devise and direct that all my estate . . . shall be divided equally among all of my descendants then living per stirpes and not per capita . . ." The majority opinion, written by Chief Judge Marbury, in which three other judges concurred, held that the grandchildren of the testator constituted the stocks or stirpes and that the division of the corpus should be in equal parts among the grandchildren. It was admitted therein that it made no practical difference in that case, on account of the provisions in the will, whether the Court there determined that the grandchildren were the stocks or stirpes rather than the children. In a separate opinion in that case, written by Judge Henderson, concurring in the result and in which two other judges concurred, it was held that the children were the stocks or stirpes and agreed that the contrary statement in the majority opinion was not necessary to the decision of the case. The majority opinion discussed in

detail the English cases of *Robinson v. Shepherd*, 32 Bevans 665 (1863) (Sir John Romilly, Master of the Rolls), reversed on appeal to the chancellor (4 D. J. & S. 129); *Gibson v. Fisher*, L. R. 5 Eq. 51 (1867); *In re Wilson*, L. R. 24 Chan. Div. 664, (1883); *In re Dering*, 105 L. T. 404 (1911); *In re Alexander*, L. R. 1919, 1 C. D. 371.

*Patchell v. Groom, supra,* was decided on June 13, 1945, and at that time, apparently due to the war, this Court did not have before it the case of *Sidey v. Perpetual Trustees Estate & Agency Co. of New Zealand, Ltd.,* (1944), AC 194. In that case a testator died leaving four surviving children, one of whom died without leaving issue. The testator had provided by his will, inter alia, (Clause 27), that: "And from and after the death of the last survivor of my said four children as aforesaid I give devise and bequeath the whole of my residuary estate real and personal to and amongst my then surviving descendants in such manner that the same shall be divisible per stirpes among the children grandchildren and remoter issue of such of my children as shall have left issue." The Court of Appeals of New Zealand held that the grandchildren of the testator were to be taken as the stirpes or stocks for the purposes of division. Northcroft, J., dissented from this view. On appeal to the Privy Council, in an opinion delivered by Lord Simonds, the view of Northcroft, J., was taken and it was there said: "It is, however, primarily on the language of cl. 27 itself that the question must be determined. Its opening words cannot be wholly disregarded. The event for which the testator now provides is the death of the last survivor of his four children for whom and their issue he had previously made separate provision out of income. On this event happening he gives the whole of his residuary estate 'to and amongst my then surviving descendants in such manner that the same shall be divisible per stirpes amongst the children grandchildren and remoter issue of such of my children as shall have left issue.' As this clause opens with a

reference to the testator's four children, so it ends with a reference to such of his children as shall have left issue. This framework suggests that for the testator each child established the stirps for which he was making provision. The class of beneficiaries is 'my then living descendants,' and some assistance again may be derived from the use of the word 'my.' There seems no reason why a testator, providing for his own descendants living at a certain time, but intending them to take not per capita, but per stirpes, should pass over the generation of his own chlidren and direct, not that each of their families should take an equal share of his estate between them, but that each of his grandchildren or their families should take an equal share. * * * The argument in favour of the latter view which appears to have been decisive in the Court of Appeal and has been urged with much force before their Lordships, is that the natural construction of a gift to persons per stirpes is that the stocks of descent shall be found among the takers and not among their ancestors. It has been contended that this has been accepted as a principle of construction since the decision of Lord Westbury in *Robinson v. Shepherd* (1), and this consideration has largely influenced the decision of the learned Chief Justice and the other judges forming the majority of the Court of Appeal. It is the fact that in the case cited the Lord Chancellor, on the language of the will under consideration, came to the conclusion that legatees who themselves participated were to be regarded as forming the stirpes, and that this line of reasoning commended itself to North J. in *In re Wilson* (2), and to Warrington J. in *In re Dering* (3), on the construction of wills which appeared to those learned judges to be similar to that under review in *Robinson v. Shepherd* (1). And in *In re Alexander* (4), Sargant J. felt himself constrained to follow the same line of reasoning and to reach a similar result, though his inclination and preference were for the view expressed by Lord Romilly in *Gibson v. Fisher* (5). Their Lordships do not think it necessary

to question the correctness of any of the decisions to which reference has been made, but they cannot elevate the reasoning which led to such decisions into a rule of construction. There appears to them on principle to be no reason why, in the construction of a gift per stirpes the stocks should be found among the takers and not among their ancestors. In the simplest case, where a gift is made to a number of persons of different stocks, but of the same generation per stirpes and not per capita, it is manifest that the stocks are to be found, not in the takers, but in the ancestors, and this result is reached, not by the displacement of any prima facie rule of construction, but by the consideration of the language of the gift without any predilection. The language of the will under appeal is to be approached in the same way."

The case of *In re Alexander, supra,* where the devise contained the words "as tenants in equal shares per stirpes", was stressed in the majority opinion in *Patchell v. Groom, supra.* It was there said in discussing that case: "The earlier cases of *Robinson v. Shepherd, Gibson v. Fisher, In re Wilson* and *In re Dering* were referred to and the writer of the opinion said he was strongly impressed with the views of Lord Romilly, M. R., in *Gibson v. Fisher* and preferred them to Lord Westbury in *Robinson v. Shepherd,* but that North, J., in *In re Wilson,* and Warrington, J., in *Re Dering* had followed Lord Westbury, and therefore he felt bound to do the same, in addition to which he found certain words in the will before him which he thought would indicate such a decision. These words were 'tenants in equal shares.' And he said they may be explained as referring to the original division of the fund, and causing that to be an equal division between all nephews and nieces surviving in person or by issue, while leaving the phrase 'per stirpes' to operate with relation to the secondary introduction of the issue of nephews and nieces. And he further said, '* * * in the present case it appears to me easier to reconcile the words "tenants in equal shares"

with a stirpital division confined to the stocks of nephews and nieces than with one extending also to stocks of the testator's brothers and sisters.' As a result the trust fund was declared to be primarily divisible into nineteen parts rather than into four." In the instant case by omission of the word "equally" the grantor negatives any intention that his descendants should take per capita. The word "equally" not appearing in the deed here before us; and this Court having placed great reliance on the English cases without benefit of *Sidey v. Perpetual Trustees Estate & Agency Co. of New Zealand, Ltd., supra,* the majority opinion in *Patchell v. Groom, supra,* is not controlling here.

The question before us in the instant case is what were the intentions of the testator. *Childs Estate v. Hoagland,* 181 Md. 550, 30 A. 2d 766. The words "my descendants" in *Patchell v. Groom, supra,* are analogous to the words "descendants of the said William H. Gorman" in the deed in the instant case. The concurring opinion of Judge Henderson in *Patchell v. Groom, supra,* is very appropriate here. It was there said: "By the use of this precise phrase, [per stirpes and not per capita] the testator indicated that his descendants should take by representation or substitution and effectively negatived any implication that any of the testator's descendants should take *per capita.* Compare *Rotmanskey v. Heiss,* 86 Md. 633, 39 A. 415, and *Plummer v. Shepherd,* 94 Md. 466, 51 A. 173. The case of *Mazziotte v. Safe Deposit & Trust Co.,* 180 Md. 48, 23 A. 2d 4, illustrates the point. In that case the expression was 'issue of my said four daughters, living at the termination of the trust per capita.' The court said: 'The word "issue" * * * in Maryland * * * has usually been found equivalent to heirs of the body or those who would take in case of intestacy, thus rendering gifts to remoter descendants only substitutional, in place of gifts to deceased ancestors. * * * But the word does not stand alone. The takers are to be the issue per capita, and the qualification seems to dispose of the question of

interpretation.' 180 Md. at page 50, 23 A. 2d at page 5. Conversely, in the will before us, the words *'per stirpes* and not *per capita'* exclude the possibility that the descendants should take in their own right and not by representation. In the *Restatement, Property,* Sec. 303, it is said that when a 'class gift' is made to the 'descendants of B' (or 'issue of B'), ordinarily distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession. In comment f to Sec. 303, it is said: 'When a limitation is made to the "issue of B," or to the descendants of "B," and all of B's children are dead, but grandchildren of B are alive, a problem arises as to whether these grandchildren of B take equal shares or take as representatives of their respective parents. This is determined in any state in the same manner as the similar problem of intestate succession is determined in that same state. Commonly statutes provide that remote issue of the intestate, when all of the same degree, take *per capita.* Where such a statute exists, the distribution of a class gift of the sort described in this comment would be regulated thereby unless a "contrary intent of the conveyor is found from additional language or circumstances." ' Comment h to Sec. 303 states: 'Limitations which come within the rule stated in this section frequently contain language or have circumstances tending to corroborate the conclusions that the term "issue" or "descendants" has been used as substantially the equivalent of "heirs of the body" and hence that distribution should be made in accordance with the law of intestate succession * * *. Illustrative of these corroborative factors are the following: (1) the conveyance specifically provides for a *per stirpes* distribution; (2) the conveyance refers to the law of intestate succession or used the word "heirs" or "inherit" or other similar word, in a manner justifying the inference that the conveyor thought of the class as having shares dependent upon their differing degrees of relationship to

a single person; and (3) the conveyance embodies a general plan of the conveyor which can be best effectuated by a stirpital distribution.' In so far as the Restatement requires distribution *per stirpes* of a gift to 'descendants' or 'issue,' without more, this reflects a change from the early English authorities, as to 'issue,' and from a dictum of Mr. Jarman in his first edition, as to 'descendants,' quoted by this Court in *Levering v. Orrick,* 97 Md. 139, 145, 54 A. 620, and by the majority opinion in the case at bar. The rule of the Restatement was, however, adopted by this court in *Mazziotte v. Safe Deposit & Trust Co., supra.* But regardless of the implication from 'descendants,' standing alone, the English and American authorities are entirely in accord on the point that distribution *per stirpes* means distribution to those who would take, by representation, under the intestacy laws.

"The Maryland Statute of Distributions, Sec. 127 et seq., Art. 93 of the Code 1939, [Section 129 et seq. of the Code 1951] (adopted by reference in Sec. 1 of Art. 46 of the Code, subtitle 'Descents') does not provide for an equal division among grandchildren where the children of the intestate are dead. See *McComas v. Amos,* 29 Md. 120 and *Iglehart v. Holt,* 12 App. D. C. 68. Nor does the English Statute of Distributions, 22 and 23 Car. II, c. 10 (*In re Natt,* 37 Ch. D. 517, 520-524), or the present Act of 1925, 10 *Halsbury's Laws of England,* Sec. 848, p. 587. The statutes in most of the other states are to the contrary. *In re Samson's Will,* 257 N. Y. 358, 178 N. E. 557; *Matter of Strohmer's Estate,* 149 Misc. 219, 266 N. Y. S. 886; See cases noted in 140 A. L. R. 1141. See also 4 *Kent's Commentaries* (14 Ed.) 375, 391, 392; 5 *Thompson, Real Property* (Permanent Ed.), Sec. 2408; *Tiffany, Real Property,* (3d Ed.), Sec. 1124; 11 *Notre Dame Lawyer,* 14, 142 et seq. In Maryland, as in England, by virtue of the Statute of Distributions grandchildren take as the representatives of their respective parents, even where those parents are dead, in cases of intestacy—and in analogous cases under wills. *Lobe v. Goldheim,* 153 Md. 248, 138

A. 5; *In re Natt, supra.* In the latter case North, J., not only pointed out that by Justinian's law, upon which the English Statute of Distributions was based, distribution to grandchildren was *per stirpes,* even when they were the only claimants, but he said: 'it may be doubted, whether our Courts of Equity would be easily induced thus to extend this restrictive construction of the distribution *per stirpes* to descendants. It was once indeed attempted before Lord Chancellor Hardwicke. But, after hearing the point discussed, he discouraged the idea of a distribution *per capita,* and gave an opinion against it.'

"In the case at bar we not only have a limitation to the descendants of the testator, which seems to refer the determination of the proportions in which the grandchildren take to the Statute of Distributions, but all of the corroborative factors stressed in the Restatement are present. There is nothing in the will which permits a *per capita* division at any time. No authority has been cited, and none has been found, which suggest doubt as to the meaning of 'my descendants *per stirpes*' or 'the descendants of B *per stirpes.*' 'My descendants *per stirpes*' or 'the descendants of B *per stirpes*' are my children or B's children, as the case may be. *Lycett v. Thomas, supra,* [153 Md. 443, 138 A. 225] and the English cases therein cited, belong to a narrow class of gifts to 'the descendants of A and B *per stirpes,*' *i.e.,* independent gifts to the descendants of any one of two or more persons, unconnected with previous gifts of income to the same descendants or the specified ancestors. In such cases, the question arises as to the intended points of reference, a question that cannot arise where the testator speaks of his own descendants, who necessarily begin with his children. In 3 *Jarman on Wills* (7th Ed.), p. 1561, it is pointed out that 'if the gifts were to the descendants of one person *per stirpes,*' the conflict between Lord Romilly's construction and Lord Westbury's could not occur.

"In Maryland, as in England, distribution among my descendants then living *per stirpes,* would seem to establish my children as the stocks and to fix the proportions in which my surviving grandchildren take. *Lobe v. Goldheim, supra* (decided two days before *Lycett v. Thomas*), *In Re Natt, supra."*

As in *Sidey v. Perpetual Trustees Estate & Agency Co. of New Zealand, Ltd., supra,* there appears here no reason why, in the construction of a gift per stirpes, the stocks should be found among the takers and not among their ancestors. Under the authorities herein cited, we are of opinion that the stocks in the instant case are the children of the grantor and that the corpus is to be divided into four parts, one part of which would pass to the children and descendants of each of the four children of William H. Gorman. The decree will therefore be reversed.

> *Decree reversed, costs to be paid from the trust estate, and cause remanded for the passage of a decree in conformity with this opinion.*