WELLER, ETC. ET AL. *v.* SOKOL ET AL., TRUSTEES
UNDER LAST WILL AND TESTAMENT
OF ARTHUR NATTANS

[No. 221, September Term, 1973.]

*Decided April 15, 1974.*

*Motion for rehearing filed by Ralph A. Nattans and
Ruth L. Creamer May 6, 1974; denied May 7, 1974. Motion
for rehearing filed by Schindler and Nicholson May 13,
1974; denied May 17, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Francis D. Murnaghan, Jr.*, with whom were *Benjamin Rosenberg* on the brief, for appellants Ralph A. Nattans and Ruth L. Creamer and *Winston T. Brundige, John J. Ghingher, Jr.*, and *Max Stul Oppenheimer* on the brief, for appellants Arthur Nattans, Jr., Roger H. Nattans and Emanuel Hecht, II.

*Morton E. Rome* for appellants Albert Lowenthal and Jean A. Lowenthal.

*William A. Fisher, Jr.*, with whom were *William R. Dorsey, III, Albin M. Plant* and *Semmes, Bowen & Semmes* and *Stanley Schindler* on the brief, for appellants Stanley H. Schindler and Thurston T. Nicholson, surviving executors and trustees of the Estate of Arthur N. Bachrach.

*Leroy W. Preston*, with whom were *O'Connor, Preston & Glenn, P.A.* on the brief, for appellant Evelyn Weller, individually and as Administratrix of the Estate of Harold Herbert.

*Roger D. Redden*, with whom was *Jeffrey J. Radowich* on the brief, for appellees Aline H. Johnson and Elinor S. Multer.

*Shale D. Stiller*, with whom were *Jay I. Morstein* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellees Arthur K. Solomon, Barbara H. Cleveland, Paul W. Schatzkin, Arthur G. Schatzkin and Dorothy R. Schatzkin.

SINGLEY, J., delivered the opinion of the Court.

This case combines a number of appeals from a decree of the Circuit Court of Baltimore City which construed the will of the late Arthur Nattans (Arthur Nattans I). While the

appeal was originally taken to the Court of Special Appeals, we granted certiorari in order that it could be docketed in this Court.

Although the factual background and particularly the family pedigree are difficult to keep in mind, the case presents two relatively simple issues:

> (i) When a will directs a distribution on the death of the testator's last surviving child among "issue and descendants" per stirpes of children of the testator who have died leaving issue surviving, where are the stocks or stirpes to be found?

> (ii) Is distribution to be made only to issue and descendants living at the time of distribution?

The chancellor (Ross, J.) determined that the stocks, or stirpes, were to be found among the children of the testator, and not among the grandchildren who were the first takers of an absolute interest, and that distribution was to be made only to descendants living at the time of distribution. For reasons to be developed, we shall affirm.

Arthur Nattans I died domiciled in Baltimore on 17 April 1905, survived by his widow, Jennie Nattans; by three children of a prior marriage: Emily N. Herbert, Addie N. Bachrach, and Samuel A. Nattans, and by five children of his second marriage: Rita Nattans (later Myers), Ralph Nattans, Edith Nattans (later Hecht), Hortense Nattans (later Solomon), and Arthur Nattans (Arthur Nattans II).

The provisions of the Nattans will, executed on 3 October 1903, with which we shall here be concerned are contained in Items Sixth and Tenth. By Item Sixth, 396 shares [1] of stock of Read Drug and Chemical Company of Baltimore City (Read's) owned by Mr. Nattans were bequeathed to trustees to pay the income from specified numbers of shares to the Nattans children, as follows:

---

1. A total of 400 shares were outstanding.

| | |
|---|---|
| Emily N. Herbert | 40 shares |
| Addie N. Bachrach | 29 shares |
| Samuel A. Nattans | 29 shares |
| Rita Nattans (Myers) | 60 shares |
| Ralph Nattans | 40 shares |
| Edith Nattans (Hecht) | 60 shares |
| Hortense Nattans (Solomon) | 60 shares |
| Arthur Nattans II | 40 shares [2] |

Item Tenth provided:

*"Tenth.* In the event of the death of any of my children above named, during the continuance of this trust, without leaving issue him or her surviving, the income herein given to the child so dying without issue living at his or her death, shall be divided equally among his or her surviving brothers and sisters annually during the continuance of this trust. And in case of the death of any one of my said children during the continuance of said trust, leaving issue him or her surviving, the income of the share of the one so dying shall go to and become the property of his or her child, if only one, or children, if more than one, equally, share and share alike. Upon the death of the last survivor of all my said eight children this trust shall cease, and thereupon the entire trust property, shall be divided by my said trustees, or their successors in the trust, among the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving *per stirpes* and *not per capita.* And the said trustees, and their successors in the trust, are authorized

---

2. The provisions made for the children accounted for 358 of the 396 shares of the Company's stock owned by Arthur Nattans I. The remaining 38 shares were also left in trust, the income from 14 shares to be paid to Mr. Nattans' widow and the income from 24 shares to be paid to a number of employees. Because no provision was made for the disposition of the income from these shares upon termination of the intervening estates, the income appears to have been equally divided among the children as a result of orders entered in equity proceedings conducted in 1906 and 1931, from which no appeals were taken.

and directed to make, execute and deliver all such deeds and instruments of conveyance or assignment as may be necessary to make said division." (Emphasis in original.)

In *Ryan v. Herbert*, 186 Md. 453, 47 A. 2d 360 (1946), our predecessors had occasion to review a declaratory decree which had construed the provisions of Item Tenth relating to devolution of income prior to the termination of the trust. That decree, which was affirmed on appeal, had directed that on the death of a child of Arthur Nattans I prior to the termination of the trust, leaving any issue whatsoever surviving, such issue took a vested interest in the income to which the dying child had been entitled, subject only to defeasance by the termination of the trust.

As a result, when Harold Herbert and Arthur N. Bachrach, grandsons of Arthur Nattans I, died prior to the termination of the trust without leaving descendants surviving, the income which each had been receiving was paid to his respective estate. No consideration was given to the devolution of the corpus at time of termination beyond a recognition that it would certainly pass in proportions which differed from the shares of income, and that it might well pass to persons other than those who had received income from the trust under the determination reached in *Ryan*.

Arthur Nattans II, the last surviving child of Arthur Nattans I, died on 24 September 1972. In consequence of his death, the trust under his father's will terminated. Appended to this opinion is a chart showing the lines of descent from Arthur Nattans I as they existed at the time of the death of Arthur Nattans II. Next to the name of each of the distributees appears a fraction representing the share of the trust respectively awarded by the lower court's decree.

This distribution was predicated upon the chancellor's determinations (i) that the remainder of the trust should initially be divided into seven parts — one part for the issue and descendants of each of the seven children of Arthur Nattans I who died leaving descendants surviving at the time of termination — and (ii) that only descendants living at the time of termination could take.

Appeals from the first part of the decree were taken in behalf of Albert Lowenthal, Jean A. Lowenthal, Ralph A. Nattans, Ruth L. Creamer, Arthur Nattans, Jr., Roger H. Nattans, and Emanuel Hecht, II, all grandchildren of Arthur Nattans I, who contended that the stocks, for the purposes of distribution, should have been found among the grandchildren, who would presumably be the first takers, and not among the children, who had life interests only. Accordingly, they argue that the initial division should have been into 13 parts, one of which should have been awarded to each of the 11 grandchildren living at the death of Arthur Nattans II, one to the descendants of Alan Herbert and one to the descendants of Dorothy Schatzkin, both grandchildren who had died prior to termination of the trust leaving descendants surviving.

Appeals from the second part of the decree were entered in behalf of the administratrix of the estate of Harold Herbert and the executors of the will of Arthur N. Bachrach, the two grandchildren of Arthur Nattans I who had died prior to the termination of the trust without leaving descendants surviving. The contention of the personal representatives was that their decedents had acquired vested interests in the corpus of the trust, not subject to defeasance by the death of their decedents prior to the time fixed for the termination of the trust without leaving descendants surviving.

Seeking to sustain both aspects of the chancellor's decree are the appellees Arthur K. Solomon, a grandchild; Aline H. Johnson, Barbara H. Cleveland and Elinor S. Multer, great-grandchildren, and Paul W. Schatzkin, Arthur G. Schatzkin, and Dorothy R. Schatzkin, great-great-grandchildren. As regards the second part of the decree, all of the appellants except the Herbert and Bachrach estates are cast in the role of appellees, supporting that portion of the court's ruling which conditioned the right to take upon survivorship. The Herbert and Bachrach estates are appellees as regards that portion of the decree which directs an initial division into seven parts.

(i)

The stirpes, or stocks, are to be found among the children of Arthur Nattans I who left descendants surviving at the time of termination, and not among the grandchildren, who are the first takers.

Concededly, this Court has been something less than sure-footed in dealing with distributions among descendants per stirpes. In *Patchell v. Groom,* 185 Md. 10, 43 A. 2d 32 (1945), construing a will drawn about two years prior to a testator's death in 1885, a divided Court found the stocks among the first takers, relying on the English cases of *Robinson v. Shepherd,* 55 Eng. Rep. 261, *rev'd,* 46 Eng. Rep. 865 (1863); *In re Wilson (Parker v. Winder),* 24 Ch. D. 664 (1883); *Re Dering (Neall v. Beale),* 105 L.T.R. (n.s.) 404 (1911), and *In re Alexander (Alexander v. Alexander),* [1919] 1 Ch. 371 (1918), thus rejecting the rule of *Gibson v. Fisher,* L.R. 5 Eq. 51 (1867), which found the stocks in an earlier generation. The same result would have obtained in *Patchell* had the stocks been found in the children, and not the grandchildren, of the testator, as was urged by a minority of the Court.

In the next case, *Ballenger v. McMillan,* 205 Md. 94, 106 A. 2d 109 (1954), where the provisions of a deed of trust drawn in 1912 were under consideration, the view of the concurring minority in *Patchell* prevailed, and the Court, relying principally on *Sidey v. Perpetual Trustees Estate & Agency Co. of New Zealand, Ltd.,* [1944] A.C. 194, found the stocks among the testator's children, and not among the first takers. For an explanation of this apparent *volte face, see Patchell v. Groom Revisited: Distributions Among Descendants Per Stirpes,* 15 Md. L. Rev. 1 (1955).

In the cases which have come before the Court since *Ballenger, Robinson v. Mercantile-Safe Deposit & Trust Co.,* 214 Md. 30, 132 A. 2d 841 (1957); *Cole v. Bailey,* 218 Md. 177, 146 A. 2d 14 (1958); *Sollers v. Mercantile-Safe Deposit & Trust Co.,* 262 Md. 606, 278 A. 2d 581 (1971), and *Kelly v. Mercantile-Safe Deposit & Trust Co.,* 262 Md. 626, 278 A. 2d 584 (1971), the Court has not wavered from applying the

*Ballenger* rule, nor is it likely to do so in the absence of a clear expression of contrary intention.

The observation which Judge Henderson made in his concurring opinion in *Patchell v. Groom, supra,* 185 Md. at 29-30, 43 A. 2d at 40-41, quoted by the Court in *Ballenger v. McMillan, supra,* 205 Md. at 104-05, 106 A. 2d at 114, that in the absence of an expression of contrary intent the direction that a distribution be made per stirpes will result in the distribution which would have been made under the statute of distribution, was amplified in *Sollers v. Mercantile-Safe Deposit & Trust Co., supra,* 262 Md. at 610-11, 278 A. 2d at 583, to the end that descendants will take in the manner provided by the statute of descent and distribution in effect at the death of the testator, just as if the person identified as the stock had died intestate at the time of distribution owning the subject of the gift, *see* Restatement of Property § 303(1) (1940), and Maryland Code (1957, 1969 Repl. Vol.) Art. 93, § 1-210, applicable to estates of persons dying after 1 January 1970; *see also* Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 93, § 1-210(a) (effective 1 July 1972).

It might not be amiss to comment here that the English cases decided in the mid-19th century, involving distributions among collaterals, must be carefully analyzed before being accepted as persuasive. The reason is that the English Statute of Distribution, 22 & 23 Car. 2, c. 10, §§ V, VI, VII (1670), was probably never in force in Maryland, and certainly was not after 1715, *see* opinion of Chief Justice Alvey (formerly Chief Judge of this Court) in *Iglehart v. Holt,* 12 App. D. C. 68, 83-84 (Ct. App. 1898), and *McComas v. Amos,* 29 Md. 120, 130 (1868) (Alvey, J.), relying on *Duvall v. Harwood,* 1 H. & G. 474 (Md. 1827), and *Robins v. State,* 1 H. & G. 476 (Md. 1809) (first reported in 1827). Our statute of distribution, now Code (1957, 1969 Repl. Vol.) Art. 93, §§ 3-102 through 3-104, is derived without substantial change from Chapter 101, subchapter 11 of the Laws of 1798.[3] The difference lies in the fact that under the British statute,

---

3. For a summary of some of the more important amendments to the 1798 law *see* 1 P. Sykes, *Probate Law and Practice* § 151, at 148 (1956).

members of different generations, if collaterals beyond brothers' and sisters' children, could take per capita, while under our statute, collaterals beyond brothers' and sisters' children in the closest degree of relationship took equally, and a more remote descendant could never share with a living parent. *Compare McComas v. Amos, supra,* 29 Md. at 130-32 *with In re Ross's Trusts,* L. R. 13 Eq. 286, 293 (1871) (Wickens, V.C.). *See generally* 6 R. Powell, Law of Real Property ¶ 999, at 665-70 (1973).

It seems to us that the problem is resolved by the black letter of Restatement of Property, *supra,* § 303(1):

> "When a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B,' or as the 'descendants of B,' and the membership in such class has been ascertained in accordance with the rules stated in §§ 292 and 294-299, then, unless a contrary intent of the conveyor is found from additional language or circumstances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate on the date of the final ascertainment of the membership in the class, owning the subject matter of the class gift." [4]

More particularly, this is explicated by comment *a* to section 303(1):

> "*a. Historical rationale.* In England a limitation in favor of the 'issue of B' or in favor of the 'descendants of B' was normally construed to be in favor of all the descendants of B in all generations (with certain restrictions as to legitimacy, see § 292) and these descendants took per capita, descendants having living parents who were also descendants sharing along with their parents.

---

4. The class in this case has been ascertained in accordance with the rules stated in section 292 and section 296 (1) (b), and comment *g.* Therefore, application of section 303(1) is appropriate.

Whatever justification this construction may have had in its origin, it is clear that its retention in the United States at the present time would cause serious deviations from the intent normally present in the mind of a conveyor limiting property to the 'issue of B.' The change from the English rule began with increased emphasis upon the constructional factors sufficient to cause 'issue' to be construed *as substantially similar* to 'heirs of the body' and hence to cause the ascertainment of the takers thereunder by reference to the statute of intestate distribution. Then the cases said that 'a faint glimpse' of a different intention would exclude the per capita and cause the per stirpes distribution. More recently the change has been frankly recognized and at the present time the rule stated in this Section represents the existing American law. This rule rests upon the fact that conveyors normally use 'issue' as substantially the equivalent of 'heirs of the body,' and seldom desire the inequalities between stirpes which were unavoidable under the earlier English rule. In so far as 'possible takers' under a gift to 'issue' are required to survive to the time of distribution, when this time is subsequent to the death of their ancestor (see § 296, Comment *g*), the law normally applied to 'heirs of the body' is departed from." (Emphasis in original.)

*See also* 3 R. Powell, *supra,* ¶ 370, at 213-16.

The group of appellants associated with Ralph A. Nattans urge that Restatement section 303 (1) is inapplicable to this situation, since a narrow reading would seem to confine it to a provision made for the issue or descendants of a single individual, which is not the situation here. What they have overlooked is that section 304 of the Restatement, taken with section 311 (1), extends the rationale of section 303 (1) to a limitation to "the issue of B and the issue of C" where "the rule stated in § 303 applies to determine the persons taking as issue of one or more of the designated persons,"

and *B* and *C* have a common parent or grandparent, which is the case here.

Instead, the appellants pin their hopes on language contained in comment *h* to section 301 (a). Section 301 calls for a per capita distribution of a gift to two or more described groups, such as "children of B and children of C" unless (section 301 (a)) a contrary intent of the conveyor can be found from language or circumstances. While there is an indication in comment *h* that in a stirpital distribution, the stirpes may be found among the first takers, we remain unpersuaded. The answer is found, of course, in the use of the word "children" in section 301, which brings into being a concept totally different from that created by a dispositive provision using the words "issue" or "descendants." In the latter case, distribution is made to the issue of *B* as if *B* had died intestate owning the subject matter of the gift. This was the rule of *Sollers v. Mercantile-Safe Deposit & Trust Co., supra.*

The appellants who urge that the stirpes are to be found among the first takers — the grandchildren — and not among the children, bottom their argument on two grounds: (i) rules of construction, and (ii) the testator's intent.

They say that the rules of construction which should be applied to the Nattans will are those which were recognized at the time the will took effect, *Evans v. Safe Deposit & Trust Co.,* 190 Md. 332, 347, 58 A. 2d 649, 656 (1948), since they were familiar to the experienced and competent lawyer who drew the will.[5] We find this argument unpersuasive. The simple fact is that the draftsman, had he researched the problem in 1903, would have found no controlling Maryland case and would have quickly identified the division of opinion which existed in three English cases: *Robinson v. Shepherd, supra,* and *Re Dering, supra,* which found the stocks among the first takers, and *Gibson v. Fisher, supra,*

---

5. The appellants take comfort in the fact he was so described in Baker v. Baylies, 231 Md. 287, 291, 189 A. 2d 820, 822 (1963). Intending to do no violence to the maxim *de mortuis nil nisi bonum,* we recall that the disposition of the remainder interest in 38 shares of the Read's stock was overlooked, as was the eventuality which gave rise to Ryan v. Herbert, 186 Md. 453, 47 A. 2d 360 (1946).

which found the stocks among progenitors of the first takers. From this dichotomy, no rule of construction could be derived. Even assuming that a rule could have been distilled from the cases, resort could be had to it only if the mode of expression was of doubtful meaning, *Judik v. Travers*, 184 Md. 215, 221, 40 A. 2d 306, 309 (1944), since rules of construction are applicable only in the absence of an indication of intention, *Tilghman v. Frazer*, 199 Md. 620, 636, 87 A. 2d 811, 818 (1925), and never to frustrate an intention, *Wiesenfeld v. Rosenfeld*, 170 Md. 63, 70, 183 A. 250, 253 (1936); *see generally* E. Miller, Construction of Wills in Maryland § 15 (1927).

We find no ambiguity in the intention of Arthur Nattans I, as expressed in his will. It is abundantly clear that in structuring the life estates created by Item Sixth of his will, he favored his children of the second marriage, who at his death ranged in age from 12 to about 17, over those of the first marriage, who were adults, and treated his daughters with greater generosity than he did his sons. On the death of the last survivor of the eight children, the trust would cease,

> "and thereupon the entire trust property, shall be divided . . . among the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving *per stirpes* and *not per capita.*"(Emphasis in original.)

Of special significance is the fact that the uneven division of income, which had existed from the inception of the trust, ceased at that point. Had the testator intended that this continue, he surely would have said so. By the same token, had he intended that the corpus be disproportionately divided among family groups, by awarding an equal share to each grandchild, he naturally would have used words indicating that each grandchild would take in his own right and not by representation, *see Mazziotte v. Safe Deposit & Trust Co.*, 180 Md. 48, 23 A. 2d 4 (1941).

While it is true that in 1905 the use of the word "issue" in the disposition of a remainder following a life estate had the primary meaning of "children" and a secondary meaning of

the issue of issue in an infinitely descending line, *Thomas v. Safe Deposit & Trust Co.,* 73 Md. 451, 458, *[Thomas v. Levering,]* 21 A. 367, 369, 23 A. 3 (1891); E. Miller, *supra,* § 90, the secondary meaning was generally imported in construing a will if intention supporting such a construction could be found, *see* Casenote, 21 Md. L. Rev. 242, 246 (1961).

The use of the phrase "divided . . . among the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving *per stirpes*" makes it pellucid that the testator was using "issue" in its secondary sense and that he was importing a succession by representation from each of his children, just as if a child had died intestate on the date of termination owning a share of the corpus and leaving descendants surviving.

That a stirpital division was intended is obvious. The appellants in the groups associated with Albert Lowenthal and Ralph A. Nattans would have us frustrate this by finding the stocks among the first takers rather than among the children. To accept this construction, however, would be to ignore the dynastic overtones which are so readily apparent in the Nattans will. The totality of a plan of disposition may be as evidential of intention as language or surrounding circumstances, *Davis v. Mercantile-Safe Deposit & Trust Co.,* 235 Md. 266, 270-71, 201 A. 2d 373, 375-76 (1964).

It will be remembered that at the time of his death Arthur Nattans I owned 396 of the 400 shares of the stock of Read's then outstanding. While provision was carefully made in the will for the discretionary sale of property which he owned in the District of Columbia, and in a codicil for the possible sale of a portion of a country place which he had bought near Catonsville, it is of special significance that Mr. Nattans conferred upon his trustees no power to sell the Read's stock nor any power to make investments of any kind. From this, it may readily be inferred that the testator did what he could to insure that his holdings would remain intact and ultimately pass to his descendants after the death of his children. This circumstance, when considered in the light of the dispositive scheme which was intended to make

equal provision for only those lines of descent containing members surviving at the time fixed for the termination of the trust, brings us unhesitatingly to the conclusion that it was the testator's intention that the stocks were to be found among the children who left issue and descendants surviving, and not among the grandchildren who were either living or had died leaving issue or descendants surviving.

(ii)

Distribution is to be made only to descendants living at the time of distribution.

The group of appellees associated with Arthur K. Solomon mounts a multifaceted defense of the chancellor's conclusion that the Herbert and Bachrach estates had no interest in the corpus of the trust at the time of distribution, despite the fact that they participated in the division of income after the decision of our predecessors in *Ryan v. Herbert, supra.* In *Ryan* itself, the Court clearly foresaw that the corpus would not necessarily pass to those who had received the income prior to distribution, 186 Md. at 461-62, 47 A. 2d at 364.

To us, however, the most compelling argument springs from the very nature of a stirpital distribution. The "issue and descendants" of the children of Arthur Nattans I could not be determined until the termination of the trust. *See* Restatement of Property, *supra*, § 296, comment *g*, §§ 303 (1), 304, 311 (1). At that time neither Harold Herbert nor Arthur N. Bachrach was alive. While their right to receive income was found to be vested in *Ryan*, their right to participate in the corpus, under the terms of the will, was implicitly conditioned on survival until distribution.

The Bachrach estate, relying upon Restatement of Property, *supra*, § 249, comment *i*, notes that the requirement of survival connoted by the words "issue" or "descendants," "is usually construed to be a basis for the defeasance of the interest limited and not to be a condition precedent thereof . . . ." The gift to "the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving *per stirpes*" was a gift to a class, not to named individuals.

Harold Herbert, Arthur N. Bachrach, and Dorothy Bachrach (later Schatzkin) were the only grandchildren in being at the death of Arthur Nattans I. As "issue and descendants" of children, on the death of their grandfather they took a vested interest in the corpus, subject to partial divestiture by the birth of other grandchildren, and subject to complete divestiture by death prior to termination, whether leaving issue surviving or not. If Herbert or Bachrach had left issue surviving, the latter would have taken by representation. Having no issue, the requirement that Herbert and Bachrach be alive at termination was a condition subsequent to the vesting in possession of their respective interests in the corpus, *Safe Deposit & Trust Co. v. Bouse*, 181 Md. 351, 357, 29 A. 2d 906, 909 (1943); *Hans v. Safe Deposit & Trust Co.*, 178 Md. 52, 62-63, 12 A. 2d 208, 213-14 (1940).

Therefore, it would seem that the Bachrach estate's reliance on the first paragraph of comment *i* to section 249 of the Restatement is misplaced. It is only necessary to examine illustration 3 to find an example closely resembling that here presented:

> "3. A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life, remainder to his issue and their heirs, per stirpes and not per capita.' B has children C and D, and D has a child E. C and D have remainder interests which are severally subject to defeasance by the owner of such interest failing to survive B; E has an interest which will fail if either E fails to survive B or D fails to predecease B . . . ."

In this illustration, Arthur N. Bachrach occupied a position similar to that held by *C*, and the children of Arthur Nattans I — Arthur Nattans II in particular — occupied a position analogous to *B*'s. As clearly expressed in the example, *C*'s interest is subject to defeasance in the event he fails to survive *B*. Accordingly, when Arthur N. Bachrach predeceased Arthur Nattans II his remainder interest divested completely. Identical reasoning applies, of course, to Harold Herbert's situation.

The cases relied upon by the personal representatives of the two estates, *Bishop v. Horney,* 177 Md. 353, 9 A. 2d 597 (1939); *Grace v. Thompson,* 169 Md. 653, *[Grace v. Continental Trust Co.,]* 182 A. 573 (1936); *Boulden v. Dean,* 167 Md. 101, 173 A. 26 (1934), and *Wilson v. Pichon,* 162 Md. 199, 159 A. 766 (1932), are readily distinguishable. In L. Simes & A. Smith, Law of Future Interests § 581, at 24 (2d ed. 1956), while discussing the construction of postponed gifts to alternate takers, the rule is stated:

> "Where the requirement of survival is found to exist, it is usually applicable only to the first named takers. The persons who are the alternative takers need not survive unless such a requirement is specifically expressed."

*See also Rennolds v. Branch,* 182 Va. 678, 29 S.E.2d 847 (1944); *cf. Lee v. Want,* 369 P. 2d 177 (Okla. 1962) (time until which alternative takers had to survive was specified). An apposite analogy can be found in the rule that accrued shares of income do not ordinarily survive, *Marshall v. Safe Deposit & Trust Co.,* 101 Md. 1, 9-10, 60 A. 476, 479 (1905), unless alternate taking is provided for.

Of the four Maryland cases, we regard *Bishop, Grace,* and *Boulden* as clearly inapposite. In *Bishop,* which involved a devise to three daughters for life with remainders to their issue, the remainder interests were held to have vested in the daughters' children on the birth of each child. *Grace* and *Boulden* both relied on the preference for early vesting to reach the conclusion that in the absence of an indication of contrary intent, remainders vested on the death of the testator and not on the death of the life tenant. Further, in *Boulden* the primary remaindermen were brothers and sisters of the testator, and the alternative remaindermen were issue of the brothers and sisters. Thus the Court's decision, to the effect that an alternate remainderman who had failed to survive the life tenant took a share of the trust corpus in question, follows the general principle discussed by Simes and Smith.

*Wilson v. Pichon, supra,* is also illustrative of the rule

stated by Simes and Smith. In that case, the testator gave his daughter a limited testamentary power of appointment over a trust held for her benefit for life, and in default of the exercise of the power, bequeathed the entire remainder to his named sons, and to their descendants per stirpes if either or both should die. When the daughter died without having exercised the power, both sons had died, one son survived by a son who in turn had died before the termination of the trust. Our predecessors held that the testator's sons took vested remainders on the death of the testator, subject to being divested upon their death before distribution, leaving a child or children surviving. The interest held by a child who survived his father, however, vested on the death of the father,[6] and was an asset of the estate of the child who predeceased the life tenant.

Returning to the point raised in this case, Harold Herbert and Arthur N. Bachrach were alternate takers of the income and therefore the result reached in *Ryan v. Herbert, supra,* is consistent with the rule. As to the corpus, however, they were *primary* takers of a class gift to "issue and descendants" — but were only entitled to take if they survived the termination of the trust. *Compare Rennolds v. Branch, supra* (class of *alternate* takers comprised of "issue").

Here, the distribution to eligible class members is governed by the intestacy law as it stood when the will of Arthur Nattans I took effect, at his death in 1905, *Evans v. Safe Deposit & Trust Co., supra; cf. Madden v. Mercantile-Safe Deposit & Trust Co.,* 262 Md. 406, 278 A. 2d 55 (1971). Because we regard the construction of the will adopted by the chancellor, and his application of the statute of distribution as it existed in 1905, *see* Code (1904) Art. 93, §§ 122 *et seq.,* as correct, we shall affirm his decree.

> *Decree affirmed, costs to be paid from the assets of the trust estate.*

---

**6.** Presumably, this interest vested upon the father's death subject to being divested in the event that the child died survived by issue, in which case the latter would have taken their ancestor's share by representation.

CHART: LINES OF DESCENT AS OF SEPTEMBER 24, 1972
FROM ARTHUR NATTANS (I)

| CHILDREN OF THE FIRST MARRIAGE | GRANDCHILDREN | GREAT GRANDCHILDREN | GREAT-GREAT GRANDCHILDREN |
|---|---|---|---|
| Emily N. Herbert b. Prior to 1892 d. 2/18/27 | Harold Herbert b. 4/4/00 d. 3/29/49 | (no descendants | |
| | Alan Herbert b. 1/6/08 d. 10/11/71 | Aline H. Johnson now living 1/14; Barbara H. Cleveland now living 1/14 | |
| Addie N. Bachrach b. Prior to 1892 d. 1/29/45 | Arthur N. Bachrach b. 9/24/90 d. 4/1/59 | (no descendants | |
| | Dorothy B. Schatzkin b. 11/19/97 d. 7/8/72 | Elinor S. Walter now living 1/14; Harvey Schatzkin b. 1/15/21 d. 9/28/58 | Paul W. Schatzkin now living 1/42; Arthur G. Schatzkin now living 1/42; Dorothy R. Schatzkin now living 1/42 |
| Samuel A. Nattans b. Prior to 1892 d. 1/21/48 | (no descendants | | |

| CHILDREN OF THE SECOND MARRIAGE | GRANDCHILDREN | | |
|---|---|---|---|
| Rita N. Myers b. 3/11/88 d. 5/22/54 | Albert Leventhal now living 1/21; Joan A. Leventhal now living 1/21; Ruth L. Creamer now living 1/21 | | |
| Ralph Nattans b. 5/3/89 d. 12/5/25 | Ralph A. Nattans now living 1/21; Beverly Weisgarden now living 1/21; Audrey N. Katz now living 1/21 | | |
| Edith N. Hecht b. 2/24/91 d. 2/22/54 | Morton E. Hecht, Jr. now living 1/14; Emanuel Hecht, II now living 1/14 | | |
| Hortense Solomon b. Prior to 1892 d. 10/8/18 | Arthur K. Solomon now living 1/7 | | |
| Arthur Nattans (II) b. 12/9/92 d. 9/24/72 | Roger H. Nattans now living 1/14; Arthur Nattans, Jr. now living 1/14 | | |