**In the Matter of the Trust Created Under the Last Will and Testament and Codicils thereto of Oliver C. WYMAN, Deceased.**

**No. 51836.**

Supreme Court of Minnesota.

July 17, 1981.

Larkin, Hoffman, Daly & Lindgren, D. Kenneth Lindgren and Richard I. Diamond, Minneapolis, for appellant.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, Thomas W. Tinkham, Gary N. Johnson, Joyce M. Connelly and John D. Levine, Faegre & Benson and Bonnie Fleming, Gray, Plant, Mooty, Mooty & Bennett and Richard Moore, Minneapolis, for respondent.

SCOTT, Justice.

This is an appeal by four trust remaindermen/beneficiaries from a judgment ordering distribution of a trust by the Hennepin County District Court consistent with the trustee's recommendations. We affirm.

This proceeding was brought in the court below to construe the terms of a trust created by the last will and testament of Oliver C. Wyman dated February 27, 1915, and codicils to the will dated August 9, 1918, and September 14, 1922.[1] At issue is the division of the trust corpus among the trust remaindermen/beneficiaries. The parties have stipulated to the facts.

Oliver C. Wyman died on October 1, 1923. Pursuant to his will and codicils, the residue

---

1. This proceeding was initiated by petition of the Northwestern Bank of Minneapolis, trustee of the Wyman Trust. The trustee sought an order of the district court approving the final accounting of the trustee; approving the acts of the trustee; construing the trust language regarding distribution; terminating the trust; ordering distribution of the trust corpus; and discharging the trustee. The trustee gave its opinion construing the trust language and recommended a schedule of distribution in accordance with that construction. Four of the trust remaindermen/beneficiaries, appellants in this action, filed written objections to the trustee's proposed distribution.

of his estate was placed in trust for the benefit of his second wife, his three daughters and the issue of his daughters. Mr. Wyman was married twice. He had two children by his first marriage—Adelaide W. Partridge and Prudence W. Ladd. His third daughter, Katherine Wyman Vaughan, was born of his second marriage.

The trust was to continue for the lifetimes of Mr. Wyman's second wife, his three daughters, and four grandchildren (the daughters of Adelaide).[2] The last of these beneficiaries died on November 18, 1979, at which time the trust terminated. Upon termination, the trust principal was to be distributed.

The primary termination and distribution provisions of the trust are found in Article "Seventh" of the will and Article "First" of the 1918 codicil. Paragraph (I) of Article "Seventh" of the will provides in part:

> After the decease of the survivor of the said Bella R. Wyman, Adelaide W. Partridge, Prudence W. Ladd, Katherine R. Wyman, Helen P. Dodge, Marion P. Mills, Charlotte W. Ordway and Georgiana Partridge, I direct that the trust hereby created shall then immediately terminate, and that *the principal of said* trust estate, or the remainder thereof then undistributed, shall be divided equally between and paid, assigned, transferred and set over to the then living issue of the said Adelaide W. Partridge and the said Katherine R. Wyman, *one-half thereof to the issue of said Adelaide W. Partridge, by right of representation, and one-half thereof to the issue of said Katherine R. Wyman, by right of representation, * *.*

*Id.* (emphasis added).

The pertinent part of the 1918 codicil provides:

> FIRST: In case my wife, Bella R. Wyman, should elect to take that portion of my estate which is allowed her as my widow by the statutes of the State of

Minnesota, instead of the provisions made for her in my Will, then and in such event, it is my desire and intent, and I hereby direct that the entire residue of my estate, aside from my wife's statutory interest, shall be held in trust by The Minnesota Loan and Trust Company, as Trustee, in accordance with the terms of said Will, and administered by it in accordance with its provisions as hereby amended and as set forth in the "Seventh" and "Eighth" subdivions [sic] thereof, on pages 2 and 11, both inclusive, of said Will, and as though my wife had died as of the date that her statutory interest was assigned and distributed to her.

> *Should my wife elect to take the portion of my estate allowed her by statute,* I direct that my daughter, Katherine Wyman Vaughan, and her issue, if any, by representation, shall after the actual decease of my wife, receive from said trust as then constituted only one-fourth of the net income therefrom, instead of the benefits provided for her and them by the "Seventh" subdivision of said Will, and that upon the termination of the trust created by said Will, the issue of said Katherine Wyman Vaughan, if any, shall receive only one-fourth of the trust estate as then constituted, *the remainder of said income and said principal to be distributed equally to my other children and among the issue of Adelaide W. Partridge, and if no such issue, as provided by said Will, all at the times and in the manner specified by said Will,* it being also my desire that the other persons named or described in said "Seventh" subdivision shall receive the benefits therein provided for as amended hereby.

(Emphasis added.)

Mr. Wyman's second wife elected to take her statutory marital share in lieu of her share under the will. As a result, Article "First" of the 1918 codicil became effective. Pursuant to Article "First," the trust cor-

---

**2.** At the time the will was executed, Adelaide was 56 years of age and had four daughters; Prudence was 51, with no children; and Katherine was 26, and without children. Mr. Wyman apparently believed his daughter Prudence would have no children, since no provision was made for her issue.

pus was divided in fourths, and one-fourth was distributed to the issue of Katherine W. Vaughan. This appeal involves the question of the manner in which the remaining three-fourths of the trust estate is to be distributed among the issue of Adelaide W. Partridge. The trustee proposed that the remaining portion of the trust assets be distributed by right of representation as follows:

| DAUGHTER OF ADELAIDE | GRANDCHILD OF ADELAIDE | DIVISION OF TRUST ASSETS PER TRUSTEE'S PETITION AND DISTRICT COURT ORDER |
| --- | --- | --- |
| Helen P. Dodge (Died 1/11/30) | Virginia M. Dodge | 25% |
| Marion P. Mills (Died 11/17/55) | George P. Mills | 8⅓% |
| | Edward E. Mills | 8⅓% |
| | Charles J. Mills | 8⅓% |
| Charlotte W. Ordway (Died 8/27/74) | Helen O. Wright | 5% |
| | Sally O. Irvine | 5% |
| | Katherine O. Wallace | 5% |
| | Charlotte O. Wyman | 5% |
| | John G. Ordway, Jr. | 5% |
| Georgiana P. Miller (Died 11/18/79) | John C. Noble | 6¼% |
| | Nancy N. London | 6¼% |
| | Sally N. Kahn | 6¼% |
| | James A. Noble | 6¼% |

Appellants, the children of Georgiana P. Miller, claim that each of the thirteen grandchildren of Adelaide should receive an equal share of the trust assets. The children of Helen P. Dodge and Marion P. Mills, the respondents in this action, argue that the trust assets should be distributed by right of representation as recommended by the trustee.

The issues thereby presented are:

(1) Should the trust assets be distributed per capita or by right of representation?

(2) If the trust assets are distributed by right of representation, what is the root generation for making that determination?

1. The will clearly provides that one-half of the trust assets are to be distributed to the issue of Adelaide W. Partridge, by right of representation. At issue is whether the provision, "First," contained in the 1918 codicil changes the manner of distribution. The codicil provides in part as follows:

[T]he remainder of said income and said principal *to be distributed equally* to my other children and among the issue of Adelaide W. Partridge, and if no such issue, as provided by said Will, *all at the times and in the manner specified by said Will * * *.*

(Emphasis added.) The district court found that the "[c]odicil did not modify the manner of distribution to said issue which had been specified in the Will."

Appellants contend that the codicil was intended to modify the manner of distributing assets as set forth in the will. In reading the codicil, appellants give its language the following interpretation:

the remainder [¾ths] of said income * * [is] to be distributed equally to my other children, and

the remainder [¾ths] of * * * said principal [is] to be distributed equally among the issue of Adelaide W. Partridge, and

if no such issue, as provided by said will, all at the times and in the manner specified by said will, * * *

Under appellants' interpretation, the phrase "all at the times and in the manner specified by said will" refers to distributions made if there are no issue and not to the distribution among the issue of Adelaide W. Partridge. Under this interpretation, the codicil changed the method of distribution prescribed by the will. Respondents, however, contend that the above phrase applies

to all distributions and therefore the codicil can be read consistently with the will. Respondents give the codicil the following interpretation:

the remainder [¾ths] of said income * * to be distributed equally to my other children and among the issue of Adelaide W. Partridge

and

the remainder [¾ths] of said principal * * to be distributed among the issue of Adelaide W. Partridge [and if no issue, as provided by said will],

all at the times and in the manner specified by said Will.

The primary purpose of construing a will (and its codicils) is to discern the testator's intent. *Levings v. First National Bank & Trust Co.*, 192 Minn. 143, 225 N.W. 828 (1934). In doing so, provisions should not be read in isolation. When possible, effect should be given to every provision of the will instrument. *In re Matter of Kischel*, 299 N.W.2d 920, 923 (Minn.1981). For this reason, the will and codicil must be read in their entirety to determine the testator's overall intent.

Article "Seventh" of the will clearly reflects the testator's intent that upon trust termination the trust assets were to be divided in equal halves, with each half to be distributed (by right of representation) to the issue of Adelaide W. Partridge and Katherine R. Wyman. Article "First" of the codicil reflects the testator's concern that his second wife might renounce his will, and elect her one-third statutory share in lieu thereof. If this occurred, Katherine Wyman Vaughan and her issue would eventually receive more than the intended one-half of the relevant estate. This contingency was anticipated in the codicil by providing that if the testator's second wife elected to take her statutory share, Katherine Wyman Vaughan and her issue would receive only one-fourth of the trust. The remaining three-fourths of the trust would be distributed to the issue of Adelaide W. Partridge. The codicil insured that the issue of Adelaide W. Partridge would receive their one-half of the estate regardless of whether the testator's second wife elected against the will. The codicil became operative when testator's second wife renounced the will.

In light of the testator's overall intent, it is clear that the codicil was not meant to change the method of distribution. It was only meant to reallocate the distribution in the event the second wife elected her statutory share. Appellants' construction would mean that the testator intended trust assets to be distributed per capita if the will were renounced, but by "right of representation" if it were not renounced. This construction is not consistent with the testator's overall intent.

2. Appellants argue that the testator's great-grandchildren constitute the root generation for a distribution by right of representation. If this contention is correct, then each of the testator's great-grandchildren would receive an equal share of the trust principal. At issue is the construction of the following portion of Paragraph (1), article "Seventh" of the will:

After the decease of the survivor of the said Bella R. Wyman, Adelaide W. Partridge, Prudence W. Ladd, Katherine R. Wyman, Helen P. Dodge, Marion P. Mills, Charlotte W. Ordway and Georgianna Partridge, I direct the trust hereby created shall then immediately terminate, and that *the principal of said trust estate*, or the remainder thereof then undistributed, *shall be divided equally between* and paid, assigned, transferred and set over to *the then living issue of the said Adelaide W. Partridge and Katherine R. Wyman, one-half thereof to the issue of said Adelaide W. Partridge, by right of representation*, and one-half thereof to the issue of the said Katherine R. Wyman, by right of representation, * * *.

(Emphasis added.)

Appellants contend that Article "Seventh" of the will expresses the testator's intent that the great-grandchildren be the root generation. Article "Seventh" provides in part that the principal "shall be *divided equally between* and paid * * * *to*

*the then living issue* of said Adelaide W. Partridge, by right of representation." [3] (Emphasis added.) Appellants interpret this to mean that the great-grandchildren are intended as the first takers of trust principal and are therefore the root generation.

However, the phrases "divided equally" and "then living issue" relate to the division between the group of Katherine's issue and Adelaide's issue. The remaining portion of Article "Seventh" clarifies that the assets are to be distributed "to the issue of said Adelaide W. Partridge, by right of representation." The clear intent of this statement is to establish the testator's children as the root generation. This result is consistent with the other will provisions which make testator's children [4] the root generation for the distribution of trust *income*.[5]

Therefore, the will distributions are to be by right of representation. This evidences testator's intent that the trust go to the descendants of his daughters by root, stock or family but not per capita. *See Lombardi v. Blois*, 230 Cal.App.2d 191, 40 Cal.Rptr. 899 (1964).

Although case law is of little assistance in construing the unique language of a will, respondents cite several cases to support their position. Specifically, respondents rely upon *Weller v. Sokol*, 271 Md. 420, 318 A.2d 193 (1974); *O'Reilly v. Jackson*, 269 S.W.2d 631 (Mo.1954); *In re Marshall's Estate*, 377 Pa. 41, 103 A.2d 420 (1954). Each of these cases presents a factual situation almost identical to the instant case. In each case the children of the ancestors were found to be the root generation.

Appellants also cite authority to support their interpretation of the will. They rely upon *Bennett v. Lloyd*, 245 Ga. 706, 267

S.E.2d 3 (1980); *Byington v. Fuller*, 587 P.2d 636 (Wyo.1978); *In re Ives Estate*, 161 Misc. 60, 291 N.Y.S. 981 (Sup.Ct.1936). Each of these cases is distinguishable from the instant case. In fact, *Bennett v. Lloyd* more likely supports respondents' interpretation. In that case, the Georgia Court stated: "The testator here did not refer to the legatees as children of his brothers and sisters. Nieces and nephews are mentioned as primary legatees, with no reference to their parents. Therefore, we conclude that they are to be taken as the stirps [sic]." 245 Ga. at 707, 267 S.E.2d at 4. In the instant case the grandchildren were referred to as issue of the testator's daughters, lending support to the construction that the great-grandchildren are not the root generation.

We therefore conclude that testator's children were intended to constitute the root generation.

Affirmed.

---

**3.** The trust terminates and is distributed upon the death of the testator's last surviving grandchild. At that point the "then living issue" are the testator's great-grandchildren.

**4.** The same distribution will result in this case regardless of whether testator's children or grandchildren are considered the root generation.

**5.** This intent is expressed in Article "Seventh", Paragraph (E) (and other paragraphs of the will), which provides for the distribution of trust *income* after a daughter's death, as follows:

The issue of any deceased daughter shall take and thereafter continue to receive, *by right of representation*, the share which its parent would have taken hereunder if living. (Emphasis added.)