60 So.2d 825

**BAKER et al. v. WRIGHT.**

**5 Div. 514.**

Supreme Court of Alabama.

Oct. 16, 1952.

L. J. Tyner, Opelika, for appellee.

Brown & McMillan, Roberts H. Brown, Opelika, and Knox M. McMillan, Auburn, for appellants.

LAWSON, Justice.

Arthur Z. Wright died September 27, 1949, leaving a will dated November 13, 1946, admitted to probate November 17, 1949, whereon letters testamentary were granted to George H. Wright (a nephew of decedent), the sole executor named in the will.

The first clause of the will consists of directions in regard to payment of debts and funeral expenses and purchase of a suitable monument.

In Items Second through Eighth of the will, specific bequests are made to eight individuals, four of whom are relatives of the deceased. One of the relatives to whom a specific bequest is made is deceased's nephew George H. Wright, who is named in the Tenth Item of the will as the sole executor.

The remaining items, which give rise to the questions involved in this case, are as follows:

"Ninth. All the rest, residue and remainder of my property, both real and personal, of whatsoever kind and wheresoever situate, I give, devise and bequeath to my executor hereinafter named, to be distributed and disposed of among my relatives living at my decease in such manner as shall be fitting and proper whether in specie, or after conversion by sale, in cash; and my executor is authorized to make such sale, either publicly or privately, as he may deem best for my estate, and without the necessity of any court order.

\*      \*      \*      \*      \*      \*

"Eleventh. Any Relative, sister, Niece, Nephew, or otherwise, of mine, or any other person, not mentioned herein, or made a legatee or devisee, is intentionally omitted herefrom."

No question is raised as to the proper execution of the will or the testamentary capacity of the testator.

This litigation was commenced by the filing of a bill by George H. Wright, as executor, wherein he asked the court for a construction of the will. Forty-one persons are made parties respondent. The respondents include sisters, nephews, nieces, grandnephews and grandnieces. Some of the respondents are residents of this state, but many of them live in widely scattered areas.

Demurrers filed by some of the respondents were overruled, but error is not assigned as to the decree overruling the demurrers.

Answers were filed by some of the respondents and decrees pro confesso taken against others.

The bill, in effect, poses two questions: First, did the testator intend by the inclusion of the Eleventh Item of the will to exclude all of his relatives from sharing in the residue of his estate except those relatives who were living at his death whom he expressly mentioned in the bill by making to them a specific bequest? Second, as to those persons who can share in the residuary estate, is the executor vested with any discretion as to whom distribution shall be made and the amount of such distribution? The executor sought to have the court construe the will to mean that the residuary estate of the testator is to be distributed only to those relatives of the testator living at his death to whom specific bequests were made in the will, in such amount to each of those relatives as the executor may deem fitting and proper.

The respondents who answered the bill take the position that the Eleventh Item of the will, if operative at all, relates only to Items Second through Eighth, wherein the specific bequests are made.

Actually, the position of the answering respondents is that although testator made a will, it was only for the purpose of disposing of that part of his property which he disposed of in Items Second through Eighth and that as to the residue of his estate, he intended that it go according to the laws of descent and distribution, as if he had died intestate. In fact the answers pray:

"\* \* \* that Your Honor will construe the said alleged will of Arthur Z. Wright to mean that the residuary estate of the testator, Arthur Z. Wright, is to be distributed to all the relatives of the testator living at the

time of his death in such amount to each of said relatives as they and each of them would take if said property were to pass as in case of intestacy, under the statutes of descent and distribution, * * *"

The cause was submitted for final decree on documentary evidence and on testimony of witnesses taken orally before the trial court.

In pertinent part the decree of the trial court is as follows:

"It is, therefore, ordered, adjudged and decreed by the Court that the relief sought by the Complainant in his Bill of Complaint, be, and the same is hereby, granted.

"It is further ordered, adjudged, and decreed by the Court and the Court finds that it was the intention of the testator, Arthur Z. Wright, that only those of his blood relations specifically mentioned in the will are to receive the residuary estate and that the distribution of the residuary estate is to be in the discretion of the Executor of the will, namely: George Herbert Wright, a nephew of the testator; that under this construction of the will, the residuary estate of the testator, Arthur Z. Wright, is to be distributed to the following persons namely: J. Peavy Wright, a nephew, George Herbert Wright, a nephew, Homer Wright, Jr., a great nephew, and Mrs. Pearl Wright Collins, a sister, of the testator (all of whom were living at the time of the testator's death); the distributive shares of the residuary estate to be in such amounts, respectively, as the Executor, George Herbert Wright, in his discretion, may determine."

From this decree Mrs. Freddie W. Baker, a niece of the decedent, a resident of Auburn, Alabama, has appealed to this court. Three of the other respondents have joined in the appeal. They are Mrs. Dorothy N. Stone, a greatniece of the testator, who lives in Temple, Texas; Mrs. Fannie Lou Miller, a niece of testator, who resides in Belton, Texas; and J. K. Zuber, a greatnephew of testator, who resides near Georgiana, Alabama.

The assignments of error are to the effect that the construction placed upon the will by the trial court is in all respects erroneous and that the trial court erred in not construing the will as showing the intention of testator that his residuary estate should be distributed among his next of kin, living at the time of his death, in proportions to be determined by reference to the statutes of descent and distribution.

At this point in the opinion, we assume the validity of the Ninth Item of the will and that the trial court was correct in holding that under its provisions the executor is vested with a discretion as to distribution to be made from the residuary estate.

With this assumption, we come to consider the question as to whether the trial court was correct in holding that the provisions of the Eleventh Item operate to limit the relatives of testator to whom the executor may make distribution from the residue of the estate to those blood relatives specifically mentioned in the will.

It is apparent from the opinion of the trial court incorporated in its decree that this holding was based on the oft-repeated statement that where there is an irreconcilable repugnancy between two clauses of a will, the latter clause must prevail as being the latest expression of the testator's intention, and on the following statement from the opinion in the case of Fowlkes v. Clay, 205 Ala. 523, 525, 88 So. 651, 653: "* * * And it is a further rule of testamentary construction that a residuary clause will be made to yield to a specific, inconsistent provision to the contrary, especially if the latter is subsequent; * * *."

The fundamental rule in the construction of wills is that the intention of the testator is the controlling factor, and it therefore becomes the duty of the court to ascertain, if possible from the terms of the will itself, the true intent of the testator and give it effect, if legally permissible. Schowalter v. Schowalter, 221 Ala. 364, 128 So. 458; Cook v. Morton, 254 Ala. 112, 47 So.2d 471.

The predominance of this rule above all others in the construction of

wills has been repeatedly emphasized by the courts in various expressions, as found in the following excerpt taken from 57 American Jurisprudence 731, Wills, Sec. 1135:

"All rules of construction are designed to ascertain and give effect to the intention of the testator, for the very purpose of the construction of a will is to ascertain such intention. Accordingly, while the courts are bound to have regard to any rules of construction which have been established, it is to be remembered that rules and presumptions relating to the construction of wills are subordinate to the intention of the testator where that has been ascertained, or is ascertainable, and must yield thereto, however crudely or artificially the will may be drawn. Rules of construction have their legitimate function when they are needed to understand the purpose intended to be embodied in the language used in the will. They take hold only where uncertainty commences and let go where it ends, and cannot control or vary the intent or properly prevent its execution. The one rule of testamentary construction to which all others are servient and assistant, it has been said, is that the meaning intended by the testator is to be ascertained and given effect in so far as legally possible. The testatorial intention will control any arbitrary rule, however ancient may be its origin, and the various accepted canons of construction serve not so much to restrict or constrain the judicial mind as merely to aid or guide it in the discovery of the intention of the testator."

▪ Where a will is subject to construction, as unquestionably is this will, a court may ascertain the true intent and meaning of the testator by putting itself, as far as possible, in the place of the testator so circumstanced and reading all the provisions of the will in the light of the environment of such testator at the time he executed the will. Thomas v. Reynolds, 234 Ala. 212, 174 So. 753; Kim-

brough v. Dickinson, 247 Ala. 324, 24 So. 2d 424; Adams v. Jeffcoat, 252 Ala. 501, 41 So.2d 183.

Testator's wife was dead at the time the will was executed. He had no children. He was survived by three sisters, ten nephews, eleven nieces, five grandnephews and twelve grandnieces. He made specific bequests to only four relatives—a sister, two nephews, and a grandnephew. To his sister who lived in Quincy, Florida, he left a silver loving cup. He gave to his nephew, George H. Wright, the executor, a $500 government bond, and he made a similar bequest to his nephew J. Peavy Wright. To his grandnephew Homer Wright, Jr., he gave a $150 government bond. He made no specific bequest to a sister with whom he was living at the time of his death or to his other sister. The evidence does tend to show that he felt close to the nephew whom he nominated as executor of his will, but his relationship with the others to whom he made specific bequests is not shown to have been closer than his connection with other members of his family living in and around Auburn to whom he made no specific bequest.

Provisions similar to those contained in the Eleventh Item of the will are not too uncommon and we think such provisions were included merely for the purpose of showing that he had made such specific bequests as he saw fit to make. We feel that to apply the rules of construction, as did the trial court, would defeat the intention of the testator to have all his property not disposed of by specific bequest to go according to the provisions of the Ninth Item. We think it might well be said that the Ninth Item should be considered as the last item of the will. Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Thomas v. Reynolds, supra; First National Bank of Mobile v. Hartwell, 232 Ala. 413, 160 So. 446.

▪ We hold, therefore, that the Eleventh Item of the will does not affect the Ninth Item, but relates merely to the specific bequests contained in Items Second through Eighth.

We come now to consider the residuary clause, the Ninth Item.

■■■ Although no such contention is made, we think it well to observe that the language of that item is not susceptible of the construction that the testator intended to leave the residue of his estate to his executor in his individual capacity. Before a gift to an executor *eo nomine* can be held to vest in him individually, the intention that it should so vest must be plainly manifested. In re Murray's Estate, 198 Misc. 45, 99 N.Y.S.2d 32. The language, "I give, devise and bequeath to my executor hereinafter named, to be distributed and disposed of among my relatives living at my decease in such manner as shall be fitting and proper etc.", certainly falls far short of plainly manifesting an intention that the gift was to the executor as an individual.

Did the trial court correctly construe the Ninth Item of the will as vesting a discretion in the executor in regard to the residue of the estate? The item contains no express language to that effect and appellants contend that since the testator did not expressly so provide, but merely provided that the executor should distribute and dispose of the estate "as shall be fitting and proper," an intention is manifested that the residue pass as if the testator died intestate.

■■■ In connection with the procedure relating to the interpretation of wills, certain legal principles have been educed and enunciated in the form of presumptions, which are now commonly accepted and regarded as substantive rules of testamentary construction. Prominent among these principles, and considered as an aid to assist and guide the judicial mind in discovering the intention of the maker of a will, is the presumption that the testator intended to dispose of his entire estate; or, stated negatively, it is not to be presumed that the testator intended to die intestate as to any portion of his property, unless the contrary intention is so plain as to compel a different conclusion. Arrington v. Brown, 235 Ala. 196, 178 So. 218, and cases cited.

Certainly the will itself contains no language which can be said to compel a conclusion that testator intended to die intestate as to any part of his estate. And the evidence as it relates to testator's relationship with a large number of the persons who would be entitled to take under the laws of descent and distribution negatives any such intention. Many of such persons lived in distant states. Testator had never even seen many of them, and it seems inconceivable to us that it was testator's intent in employing the language used in the Ninth Item to have his modest residuary estate distributed in small portions to distant relatives whom he did not know.

■■■ In Rudulph v. Hodo, 228 Ala. 170, 153 So. 238, we observed that courts cannot incorporate into a will words not expressed therein unless the will clearly shows that such was testator's intention.

■■■ We think it clearly appears that testator did not intend to die intestate. And under the terms of the residuary clause the residue of the estate must be distributed either according to the discretion of the executor, acting in his fiduciary capacity, or be distributed according to the laws of descent and distribution. This being the case, we think the court was justified in effect incorporating into the Ninth Item the words "as my executor shall in his discretion deem fitting and proper," or words of similar import.

■■■ In pursuing the general presumption that testator did not intend to die intestate as to any part of his estate, and to prevent the happening of the incongruous condition of the estate passing partly by will and partly by descent, words may be supplied, so that the instrument may not perish and the manifest intent of the testator be not defeated. McMahan v. Hubbard, 217 Mo. 624, 118 S.W. 481; Mercantile-Commerce Bank & Trust Co. v. Binowitz, Mo.App., 238 S.W.2d 893.

Moreover, the evidence tends to support a finding that the absence in the Ninth Item of words expressly vesting discretion in the executor as to the distribution of the residue of the estate results from an error of the party who copied the will for testator.

Since the will here under consideration does not plainly disclose a purpose to the contrary, the word "relatives" as used in the Ninth Item is to be construed to mean those who would take under statutes of descent and distribution. Clark v. Campbell, 82 N.H. 281, 133 A. 166, 45 A.L.R. 1433; In re Fingerhut's Estate, Sur., 85 N.Y.S.2d 716.

So construed, the Ninth Item of the will purports to confer upon the executor the power to distribute the residue of the estate among those persons who would have been entitled to inherit if testator had died intestate, in such proportion as in his discretion he determines each such person selected should receive.

Section 85, Title 47, Code 1940, reads as follows:

"When a disposition under a power is directed to be made by, between, or among several persons, without specifying the sum or share to be allotted to each, all the persons designated are entitled to an equal proportion; but when the terms of the power import that the estate or fund is to be distributed between the persons so designated, in such manner or proportion as the trustee of the power may think proper, the distribution or apportionment made by such trustee cannot be impeached in law or equity, on the ground that it is unsubstantial, illusory, or nominal."

But the power conferred on the executor is coupled with a trust. 80 A.L.R. 504–505 quotes the following, with which we concur:

"In Milhollen v. Rice (1878) 13 W. Va. 510, Green, President, speaking for the court, said: 'As I understand the law deducible from the English and Virginia cases, three things are necessary to create a power in the nature of a trust: First, there must be certainty in the subject, that is, the property to be disposed of must be clearly defined; secondly, there must be certainty in the object, that is, the beneficiaries, where the power is executed, must be certain; but by this is not meant that the will must name definitely the individual person or persons who are to be the beneficiaries when the power is executed; but the will must point out a definite class, to one or more, or the whole, of which the donee of the power is to dispose of the whole, or a part, of the subject of the power; and lastly, the power must be imperative; but in using the word "imperative" it is to be understood in a sense somewhat different from its ordinary signification. Its meaning as here used is that under the will it is his duty to execute the power; and it is to be borne in mind that it is always his duty to carry out the intention of the testator, as shown by the will, no matter in what language that intent may have been expressed; and if therefore the testator, either by express declaration or fair implication, shows that he wishes the power he has given to be executed, it becomes the duty of the donee to execute such power; and such power is then regarded as imperative in the sense in which I have used the word. If a testator confers a power by simply authorizing the donee to dispose of definite property to or among a definite class of persons, as the donee may think proper, such a power will be held to be imperative, unless the testator by his will shows satisfactorily that he had no wish that such class, or any member of it, should be the objects of his bounty, unless the donee of the power desired. The mere giving of such power raises an inference that the testator desires it to be exercised, unless it be shown by clear words, or necessary implication, that the testator intended to relieve the donee of the power of the duty of executing it, which duty the mere grant of power imposed upon him. This must be shown, and that the testator had in contemplation that the power might not be executed, and designated that it should not be if the donee thought proper to leave it unexecuted.' "

In the instant case, (1) the subject is certain, being the residue of the estate; (2)

the objects are certain as a class "among my relatives living at my decease" (Goodale v. Mooney, 60 N.H. 528, 49 Am.Rep. 334; Lundie v. Walker, 126 N.J.Eq. 497, 9 A.2d 783; see Green v. Collins, 28 N.C. 139, 6 Ired. 139 and Carroll v. Adams, Sup., 105 N.Y.S 967); (3) the very language used shows that the power is imperative.

In People v. Kaiser, 306 Ill. 313, 137 N.E. 826, 828, it is said:

> " * * * Where, however, the power is coupled with a trust, which exists when by the instrument creating the power the execution thereof is made an imperative duty and is therefore regarded in equity as a trust to be carried out by the person to whom the power is given, a court of equity will compel the execution of the power on the same principle on which courts of equity will enforce any trust. * * *"

While the power of appointment is imperative, under the construction which we have placed on the residuary clause, it is discretionary as to which relatives the executor may appoint and the amount they shall receive. However, the executor is himself a "relative" and in so far as he should elect to make distribution to himself, his action should be governed by the fact that the testator did not see fit to leave the residue of his estate to him absolutely, but reposing confidence in him, left it to him in his fiduciary capacity to be distributed as he thinks fit and proper in the exercise of entire good faith. An improper exercise of his power is not beyond the authority of a court of equity to correct. In re Babbage's Estate, 201 Misc. 750, 106 N.Y.S.2d 332.

The decree of the trial court is affirmed in part and in part reversed and remanded.

Affirmed in part, and in part reversed and remanded.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.