Defendant, Trailmobile, Inc., appeals from a judgment based on as jury verdict of $49,317.30 in favor of plaintiff Ocie M. Cook, Jr. ("Cook"). A jury verdict in the amount of $120,881.24 was awarded to plaintiff Ocie Cook Transports, Inc. ("Cook Transports"), but was set aside by the trial judge on the defendant's motion for judgment notwithstanding the verdict. Cook Transports appeals from the judge's order setting aside the jury verdict in its favor and entering JNOV for Trailmobile. We affirm the trial court's judgment in each case.
The facts of these consolidated appeals can be summarized as follows:
In December 1976, Cook, the president and sole stockholder of Cook Transports — a corporation in the business of hauling freight — purchased fifteen 40-foot trailers, 12 of which are at issue in this litigation, from Trailmobile. Cook Transports had previously entered into a lease agreement with Trailmobile regarding the lease of up to 19 trailers. Trailmobile is a corporation engaged in the manufacture and distribution of freight hauling equipment of the nature used by Cook Transports. Cook's account with Trailmobile included financing agreements with Trailmobile; the terms of those agreements required, on each trailer, 59 monthly payments of $461.00 and one payment of $423.00 at the end of the contract. Within a year after the financing agreements were entered, Cook became delinquent on his purchase account and Cook Transports became delinquent on its lease account. Cook and Cook Transports entered into an agreement with Trailmobile in which their payments were extended and they resumed their payments required by the financing agreements. Cook and Cook Transports became delinquent once again in the second quarter of 1982. In mid-June 1982, Trailmobile sent Cook a letter demanding payment of $4,595.21, which was the balance of the Cook account. On June 22, 1982, a repossessor was sent to the premises of Cook Transports, where the 12 trailers were located, to repossess them because of Cook's delinquency. Cook gave the repossessor a Cook Transports check for the amount requested — $4,595.21, which was sent to Trailmobile. Trailmobile determined that Cook Transports owed $540.00 for delinquent lease payments. Cook Transports denied owing this amount. Trailmobile applied the Cook Transports $4,595.21 check first to the Cook Transports lease account and then to the Cook purchase account, which left a balance of $815.00 owed to Trailmobile by Cook.[1] After the check was delivered to the repossessor, Cook made a demand on Trailmobile for the certificates of title for the 12 trailers. Trailmobile responded by mailing to Cook correspondence regarding the alleged $815.00 balance. There was evidence presented to indicate that this correspondence was mailed to an out-of-date or inaccurate address.
Evidence was presented at the trial of this matter, that Cook had attempted, in early 1982, to use the trailers as collateral to obtain additional financing for Cook Transports from Walter Heller Company, Inc. A Heller C.P.A., after auditing Cook Transports accounts receivable determined that Cook Transports was in a debit position and was not capable of meeting its daily expenses. Heller's C.P.A. also testified that Heller was willing to provide financing in the amount of $50,000.00, which was to be used in the daily operations of Cook Transports. Trailmobile refused to furnish the titles to either Cook or Heller for the purpose of Heller's securing a second mortgage on the trailers. Evidence was presented indicating that as a result of Trailmobile's refusal to release the titles, Cook Transports suffered $85,946.00 in overdraft charges between July 1982 and December 1984. *Page 685 
Testimony presented by Cook also indicated that a representative of Great Dane Trailers, Inc., another freight hauling company, had indicated a willingness to pay $7,500.00 individually for the trailers and $90,000.00 collectively prior to the change in federal regulations regarding the increase in length of trailers.[2] Evidence was also presented indicating that the trailers were worth approximately $1,500.00 individually and $18,000.00 collectively at the time of the trial of this matter. Cook testified that the proposed sale — made before the change in federal statutes — could not be consummated because of Trailmobile's refusal to provide the certificates of title to the trailers. Testimony was also presented regarding a study and projection of revenue earned on the 40-foot trailers as compared with the larger 42-, 45-, and 48-foot trailers now allowed by law. This study showed that Cook Transports lost $33,495.66 by being forced to operate the smaller trailers as opposed to being able to sell the small ones and to obtain and operate larger ones.
Three issues are to be addressed by this appeal:
1. Was the $4,595.21 payment by Cook Transports to be applied to the Cook account or to be partially applied to the Cook Transports lease account and the balance applied to the Cook account?
2. Does Code of Alabama 1975, § 32-8-64, create civil liability for the violations of the provisions of Code of Alabama 1975, § 32-8-13?
3. Were the losses to Cook and Cook Transports the foreseeable and proximate result of Trailmobile's failure to transfer the certificates of title?
 I.
The general rule regarding the application of a payment by a debtor to a creditor, to whom he owes several debts, is stated in Sumlin v. Hagan Storm Fence Co. of Mobile, Inc.,409 So.2d 818 (Ala. 1982):
 "Where a debtor who owes more than one debt to the same creditor does not specify to which debt a payment is to be applied, the creditor may apply the payment as it chooses. Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975); Sherrill v. Federal Land Bank of New Orleans, La., 244 Ala. 461, 14 So.2d 361 (1943). Once application is lawfully made by either party having that right, that application is final and conclusive. Redd Bros. v. Todd, 209 Ala. 56, 95 So. 276 (1922). Where neither party specifies an application of the payment, the law will apply it in the manner most beneficial to the creditor. Lee v. Southern Pipe and Supply Co., 283 Ala. 37, 214 So.2d 313 (1968); Lipscomb v. Tucker, supra; Redd Bros. v. Todd, supra."
Trailmobile argues that its June 3, 1982, letter demanding payment in the amount of $4,595.21 from Cook and the subsequent payment by Cook Transports in the amount of $4,595.21, after an attempted repossession of the collateral, did not create an earmarking, or designation, of the payment and thus imposed no duty upon Trailmobile to apply the payment first to the Cook account. Trailmobile further argues that its decision to apply the payment first to the Cook Transports account was discretionary. We must disagree, based on our review of the facts. We are of the opinion that the jury could reasonably have determined that Trailmobile's June 3, 1982, letter demanding payment of $4,595.21 on Cook's account, Trailmobile's subsequent attempt to repossess the trailers purchased on that account, and the payment in the amount of $4,595.21, were sufficient to earmark the $4,595.21 payment so that it should have been applied first to Cook's account. Jones v. Frye andAnders Equipment Co., 42 Ala. App. 102, 154 So.2d 47 (1963).
Such an earmarking would have meant that Trailmobile had an affirmative duty to apply the Cook Transports payment first to the Cook purchase account. *Page 686 
 II.
Code of Alabama 1975, § 32-8-64, creates a duty and allows a 10-day time limit, after demand, for the transfer of the certificate of title to the debtor by the creditor:
" § 32-8-64. Release of security interest.
 "(a) Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, he shall, within 10 days after demand execute a release of his security interest, in the space provided therefor on the certificate or as the department prescribes, and mail or deliver the certificate and release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate. The owner, other than a dealer holding the vehicle for resale, shall promptly cause the certificate and release to be mailed or delivered to the department, which shall release the lienholder's rights on the certificate or issue a new certificate.
 "(b) Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of a prior lienholder, the lienholder whose security interest is satisfied shall within 10 days after demand execute a release in the form the department prescribes and deliver the release to the owner or any person who delivers to the lienholder an authorization from the owner to receive it. The lienholder in possession of the certificate of title shall either deliver the certificate to the owner, or the person authorized by him, for delivery to the department, or, upon receipt of the release, mail or deliver it with the certificate to the department which shall release the subordinate lienholder's rights on the certificate or issue a new certificate.
 "(c) Upon receipt of the releases of security interests mentioned in subsections (a) and (b) of this section, the department shall file each release in the manner prescribed by the department and note the same upon the records of notices of security interests maintained by it. (Acts 1973, No. 765, p. 1147, § 22.) [Emphasis added.]"
Section 32-8-13 defines the failure of a secured party to transfer the certificate of title within the prescribed period as a misdemeanor:
" § 32-8-13. Offenses constituting misdemeanors.
"A person is guilty of a misdemeanor who:
 "(1) With fraudulent intent, permits another, not entitled thereto, to use or have possession of a certificate of title;
 "(2) Willfully fails to mail or deliver a certificate of title or application therefor to the department within 10 days after time required by this chapter. . . ."
The statute does not provide explicitly for civil sanctions. Trailmobile makes this omission the basis of its argument. It argues that the failure of the legislature to explicitly provide for civil sanctions in this Code section prevents the creation of civil sanctions. It contends that because this statute was upheld by the Court of Criminal Appeals inState v. Spurlock, 393 So.2d 1052 (Ala.Crim.App. 1981), as a valid exercise of the State's police powers, it cannot be used to support a civil action to be prosecuted by private individuals. It further argues that, were civil liabilities intended, the state legislature would have dealt with the matter in Code of Alabama 1975, § 5-18-19-the "Mini Code."
We agree with Trailmobile's argument that Code of Alabama 1975, § 32-8-1 et seq., do not create an independent cause of action in the party who is damaged by the secured party's refusal to transmit title upon the satisfaction of the lien on the property.
Although § 32-8-1 et seq. do not create an independent cause of action in tort, that does not mean that those sections do not establish a standard of conduct for persons or corporations who come within its terms. The trial judge, in his instruction to the jury, did not imply that the statute created a cause of action. However, like the trial judge in a negligence or *Page 687 
intentional tort claim who instructs the jury on the rules of the road and the DUI statutes, the trial judge in this case instructed the jury on the duty imposed by the statute on those persons who were affected thereby. In any negligence claim, there must be a duty and a breach of that duty and damages proximately resulting from the breach. In the instant case, the statute created a duty, although a corresponding duty was imposed by the contract entered into by the parties.
Furthermore, even if the contract did not specify that Trailmobile was obligated to furnish Cook with the certificates of title upon satisfaction of the lien, that obligation is written into the contract by operation of the statute. This case is not different from our cases where the plaintiff has a cause of action ex contractu, as well as a corresponding cause of action ex delicto; such cases include every medical malpractice case, as well as every suit by a patient against a hospital claiming a breach of the standards of care due to the patient by the hospital. Riase v. Wood, 540 So.2d 646 (Ala. 1988).
 III.
Cook argues that he is entitled to recover damages from Trailmobile for its breach of the security and sales agreements by failing to surrender title to the trailers upon the satisfaction of the underlying debt. He measures his damages in the following manner:
 "1) Cook asserts he was prevented from selling the trailers while they were worth $7,500.00 individually and $90,000.00 collectively, and that at the time of the trial the trailers were worth $1,500.00 individually and $18,000.00 collectively. He seeks the difference in value — $72,000.00."
Trailmobile counters this claim with the argument that during the period in question, the trailers produced $135,000.00 in revenue and that Cook should recover for his inability to sell the trailers during the time he was actually using them. We disagree. It is apparent from our review of the record that Cook would have sold the 40-foot trailers and obtained the larger trailers allowed by law, which would have yielded at least the $135,000.00 in revenue that Trailmobile argues prohibits Cook's recovery.
Trailmobile argues next that the change in federal law allowing larger trailers was not foreseeable, and it uses as support, Marshall Durbin Farms v. Landers, 470 So.2d 1098 (Ala. 1985). We again must disagree. We are of the opinion that when a party enters a contractual arrangement of this nature, it is within the contemplation of the parties that intervening circumstances — the change in the law in this case — may increase or decrease the value of the subject property. Furthermore, it is definitely within the contemplation of the parties that the purchaser of a chattel may wish to sell that chattel upon satisfaction of the underlying debt to purchase a more profitable chattel. We, therefore, must hold that Cook was entitled to damages for the decrease in value of the trailers between the time he paid off his balance and the time of the trial of this case, and we affirm the trial court's denial of Trailmobile's JNOV motion.
We now turn to Cook Transports' appeal from the JNOV granted to Trailmobile — which had the effect of setting aside a verdict of $120,881.24 in favor of Cook Transports. Cook Transports argues that it is entitled to damages based upon Trailmobile's failure to give Cook authorization to transfer the titles to Heller which, it says, resulted in Heller's refusal to lend Cook funds in order that he could infuse capital into Cook Transports to cover certain bank overdrafts. Cook Transports asserts that it suffered a total of $85,946.00 in overdraft charges between July 1982 and December 1984. It also sought damages for lost profits. We have held that the standard of review for testing a motion for JNOV is whether there exists evidence to support the jury's verdict, Harmon v.Motors Ins. Corp., 493 So.2d 1370 (Ala. 1986). We hold that the evidence concerning the damages to Cook Transports regarding the failed Heller loan was too speculative *Page 688 
to serve as the basis of a recovery of damages, based on the rule stated in Faith, Hope and Love, Inc. v. First Alabama Bankof Talladega County, 496 So.2d 708 (Ala. 1986), in which the Court held that damages for lost profits are not recoverable if speculative. We further note that it is not clear that Cook Transports would be the proper party to pursue a claim based on the failure of Trailmobile to transfer the titles to Heller and Heller's refusal to lend money to Cook, which Cook may or may not have used for the purposes of Cook Transports. We, therefore, must affirm the trial court's summary judgment statement.
AFFIRMED.
JONES, and STEAGALL, JJ., concur.
TORBERT, C.J., and SHORES, J., concur in the result.
[1] Trailmobile claimed $540.00 as the unpaid balance on the Cook Transports lease account and also assessed a $275.00 collection charge for the fee paid to the repossessor.
[2] See 23 U.S.C. § 127, 49 U.S.C. Appx. §§ 2314-2315, 23 C.F.R. 658. 23 C.F.R. 658 prohibited states from imposing length limitations of less than 48 feet effective December 1, 1982.