ADAMS, Justice.
Landmark Chevrolet, Inc., appeals from a judgment entered in favor of Central Bank of the South and awarding damages of $12,378.41 in a breach of contract action. We reverse and remand.
The case was submitted to the trial court on the pleadings and the following stipulation of facts:
On December 12, 1986, Landmark Chevrolet, Inc., and Central Bank entered into a “Dealer Discount Agreement,” which provided for the sale and purchase of security agreements, “including installment sale contracts, notes and chattel paper, arising out of the sales of new and/or used motor vehicles by Dealer (‘Landmark’) in the regular course of Dealer’s business.” Under the pertinent provision of the agreement, Landmark was to comply fully with the Alabama Uniform Certificate of Title and Antitheft Act and was to indemnify Central Bank for “all losses, damages and penalties incurred or imposed because of failure to comply with said requirements.”
On September 21, 1990, Pamela Southard purchased a used motor vehicle from Landmark. This purchase was financed by Central Bank. Redstone Federal Credit Union, the prior lienholder on the vehicle, executed the transfer of title by signing the release of lien signature block on the original certificate of title on September 25, 1990.
On November 16, 1990, Landmark filed with the State Revenue Department an application for the reassignment of title. At the time of this filing, Landmark did not have the original certificate of title and, as a result, the application was rejected by the Revenue Department. The original certificate of title was delivered to Landmark on January 10, 1991. Landmark reapplied for the new certificate of title sometime between January 29, 1991, and February 1, 1991, and the certificate of title was issued on February 1, 1991.
On January 23, 1991, Southard filed a bankruptcy petition, pursuant to Chapter 13 of the Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Alabama. On February 21, 1991, the petition was converted to a Chapter 7 petition. Central Bank filed a secured claim with the Bankruptcy Court, claiming that it held a perfected security interest in the vehicle. This claim was objected to by the bankruptcy trustee and, pursuant to the request of the trustee, the bankruptcy court held that the debt and the lien on the vehicle were both unsecured.
Central Bank sued Landmark, alleging breach of contract and seeking indemnification for Central Bank’s loss that had resulted from the avoidance of its security interest in the vehicle.[1] The case was submitted to the trial court on a stipulation of facts, and the trial judge entered a final judgment in favor of Central Bank on January 6, 1992. Landmark timely filed this appeal.
I.
We note initially that the “usual presumption of correctness applied to the trial court's findings in an ore tenus case is not applicable here. Where the evidence is stipulated, and no testimony is presented orally to the trial court, this Court reviews the evidence without any presumption of correctness, i.e., without any presumption in favor of the trial court’s findings. In such a situation, this Court sits in judgment on the evidence.” Sevigny v. New *1045 South Federal Sav. & Loan Ass’n, 586 So.2d 884 (Ala.1991).
II.
On appeal, Landmark contends that the trial court erred in holding that it had not complied with the requirements of Ala. Code 1975, § 32-8-1 et seq. (Alabama Uniform Certificate of Title and Antitheft Act, “the Act”) and that it was, therefore, contractually liable for the loss suffered by Central Bank. We agree.
The Act provides the exclusive method of perfecting a security interest in motor vehicles. Hill v. McGee, 562 So.2d 238 (Ala.1990).
Section 32-8-61 provides:
“(a) Unless excepted by this section, a security interest in a vehicle for which a certificate of title is required by the terms of this chapter is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this article.
“(b) A security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lien-holder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 20 days thereafter, otherwise, as of the time of the delivery.”
Section 32-8-44 generally defines the transfer of ownership of a motor vehicle, and, specifically, subsection (c) provides:
“Upon request of the owner or transferee, a lienholder in possession of the certificate of title shall, unless the transfer was a breach of his security agreement, deliver the certificate to the transferee. Upon receipt of the certificate the transferee shall make application to a designated agent for a new certificate. The delivery of the certificate does not affect the rights of the lienholder under his security agreement.”
Section 32-8-64 “creates a duty and allows a 10-day time limit, after demand, for the transfer of the certificate of title to the debtor by the creditor.” Trailmobile, Inc. v. Cook, 540 So.2d 683 (Ala.1988). Section 32-8-64(b) provides:
“Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of a prior lienholder, the lienholder whose security interest is satisfied shall within 10 days after demand execute a release in the form the department prescribes and deliver the release to the owner or any person who delivers to the lienholder an authorization from the owner to receive it. The lienholder in possession of the certificate of title shall either deliver the certificate to the owner, or the person authorized by him, for delivery to the department, or, upon receipt of the release, mail, or deliver it with the certificate to the department which shall release the subordinate lienholder’s rights on the certificate or issue a new certificate.”
Central Bank asserts that its loss occurred because Landmark did not timely deliver the certificate of title to the vehicle, along with the other appropriate information, to the Revenue Department as required by the Act. Central Bank further states that its loss in the bankruptcy court occurred because Central Bank’s lien was not perfected. The record, however, does not support Central Bank’s contention that Landmark did not comply with the requirements of the Act.
While the Act “provides the exclusive method of perfecting a security interest in a motor vehicle covered by the act,” Hill, supra, 562 So.2d at 240, it does not explicitly provide a time period within which the security interest must be perfected. Hill. Landmark received the original certificate of title on January 10, 1991, and forwarded it, along with the application for a new certificate of title, to the Revenue Department sometime between January 29, 1991, and February 1, 1991. No evidence was presented to explain Redstone’s delay in forwarding the original certificate of ti- *1046 tie to Central Bank, nor was any evidence presented to explain Landmark’s delay in filing for a new certificate of title.
III.
Landmark argues that because it complied with the requirements of the Act, it is not contractually obligated to indemnify Central Bank for the loss occasioned by the avoidance of Central Bank’s security interest. Central Bank contends that because Landmark failed to perfect Central Bank’s security interest in a timely manner, Landmark is contractually obligated to indemnify Central Bank for its loss. The trial court apparently adopted Central Bank’s construction of the contract as requiring Landmark to perfect Central Bank’s security interest within a required time period.
We stated in Johnson v. Cervera, 508 So.2d 257, 258 (Ala.1987), that “[wjhere ... the terms of the contract are clear and certain, the court’s duty becomes that of simply determining the meaning of those terms. This duty does not include the authority to construe unambiguous contract terms to mean anything except what is set out in plain language.”
The pertinent provision of the Dealer Discount Agreement between Landmark and Central Bank states:
“7. Dealer will comply in full with all requirements relating to motor vehicles contained in that Act known as the Alabama Uniform Certificate of Title and Antitheft Act, Number 765, Regular Session, 1973, Alabama Legislature, and all acts subsequently passed dealing with the regulation of the issuance of certificates of title, and further agrees to indemnify Bank for all losses, damages and penalties incurred or imposed because of failure to comply with said requirements.”
The Agreement limits Landmark’s liability to situations involving “losses, damages and penalties incurred or imposed because of failure to comply with said requirements." (Emphasis added.) Thus, under the terms of the contract, Landmark is required to indemnify Central Bank only if Landmark failed to comply with the agreement. The evidence presented does not support Central Bank’s argument that Landmark failed to fully comply with the terms of the agreement when Landmark did not timely perfect Central Bank’s security interest.
This case presents an unusual situation. Landmark did comply with the requirements of the Act, but its efforts were thwarted by Redstone’s delay in forwarding the original certificate of title to Landmark, as well as by Ms. Southard’s filing of a bankruptcy petition. Central Bank drafted the agreement in this case; it could have incorporated time constraints into the agreement under which Landmark would have had a specified time in which to perfect any security interest governed by the agreement, but it did not. We, therefore, hold that Landmark complied with the Act and that Landmark is not contractually obligated to indemnify Central Bank.
For the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded for the entry of a judgment for the defendant consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ„ concur.

. Redstone Federal Credit Union was not joined as a party in this proceeding. Trailmobile, Inc. v. Cook, 540 So.2d 683, 686 (Ala.1988), states that the Alabama Uniform Certificate of Title and Antitheft Act, § 32-8-1 et seq., Ala.Code 1975, does not "create an independent cause of action in the party who is damaged by the secured party's refusal to transmit title upon the satisfaction of the lien on the property.”