ROBERTSON, Presiding Judge.
This is an appeal from the judgment of the Autauga County Circuit Court directing First Alabama Bank, Montgomery (“FAB”), as trustee of a trust created under the will of Louise M. Smith for the duration of the life of Dean Bergman Smith (“the Dean Bergman Smith trust”), to divide the corpus of and the accumulated income from that trust after his death.[1] The judgment directs FAB to divide the trust property into two equal parts, one part to be distributed equally among Suzanne Wendland Rhodes, James M. Wendland, Margaret D. Wendland, and Andrew M. Wendland, who are the children of Diane Smith Wendland (“the Wendland children”), and one part to be distributed equally among Howard M. Smith, Dale G. Smith, and David B. Smith, who are the children of Don McQueen Smith (“the Smith children”). We affirm the trial court’s judgment. *206 This litigation began when FAB petitioned the trial court for declaratory relief and for instructions in distributing the property of the Dean Bergman Smith trust. ■ FAB named the Smith children and the -Wendland children, all of whom are the real parties in interest in this case, as defendants, and each of the defendants accepted service of the complaint and .appeared through counsel. After the parties notified the trial court that there were no factual disputes and that only legal issues were involved, the trial court directed the parties to brief the legal issues and to file appropriate factual stipulations. The parties jointly filed stipulations and exhibits thereto, and both the Smith children and the Wendland children filed briefs; subsequently, the trial court entered its judgment, in which it directed division of the trust property and awarded legal fees and expenses to FAB from that trust.
The Wendland children appealed to our supreme court; that court transferred the appeal to this court pursuant to Ala.Code 1975, § 12-2-7. '
This appeal is taken from a judgment entered upon stipulated facts; as a result, our review is de novo. “Where the evidence is stipulated, and no testimony is presented orally to the trial court, this Court reviews the evidence without any presumption of correctness, i.e., without any presumption in favor of the trial court’s findings. In such a situation, this Court sits in judgment on the evidence.” Landmark Chevrolet, Inc. v. Central Bank of the South, 611 So.2d 1043, 1044-45 (Ala.1992) (quoting Sevigny v. New South Federal Sav. & Loan Ass’n, 586 So.2d 884, 886 (Ala.1991)).
Among the facts stipulated by the parties are the following. Louise ,M. Smith, a resident of Autauga County, executed a will on December 24, 1963, prepared for her by one or more attorneys in Montgomery.[2] At the time of executing her. will, Mrs. Smith had three children: Don McQueen .Smith, who is the father of the Smith children; Diane Smith Wendland, the mother of the Wend-land children; and Dean Bergman Smith, who at the time was childless. In addition to making several specific devises and bequests to various named individuals, Mrs. Smith’s will contains a residuary provision transferring all of the remainder of her property to the First National Bank of Montgomery (FAB’s predecessor entity) to be held in trust.
Under the will, First National Bank was to apportion the residue of Mrs. Smith’s property into three equal parts, each constituting a separate trust estate to be held for the general benefit of the offspring of each of her three children during the lifetime of that child. Thus, the four Wendland children (upon attaining the age of 21) were to receive annual payments of income from that particular trust held by First National Bank during their mother’s lifetime and the three Smith children (upon attaining the age of 21) were to receive annual payments of income from the corresponding trust held during their father’s lifetime. Because Dean Bergman Smith had no children at the time, Mrs. Smith’s will provided that should he later have children, those children would (upon attaining the age of 21) receive annual income payments from the Dean Bergman Smith trust. However, if Dean Bergman Smith remained childless, one-seventh of the annual income from the Dean Bergman Smith trust held by First National Bank during his lifetime would be paid each year to each of Mrs. Smith’s grandchildren who had reached 21. During Dean Bergman Smith’s lifetime, he had no children, and FAB as trustee has paid an equal one-seventh share of the annual income from the Dean Bergman Smith trust to each of the Wendland children and the Smith children.
The trusts created under Mrs. Smith’s will also contained specific instructions concerning termination of the trusts upon the death of each of her children. Each of the three trusts held by First National Bank during the lifetime of Mrs. Smith’s children terminate upon the death of Don McQueen Smith, Diane Smith Wendland, and Dean Bergman Smith respectively. Under Mrs. Smith’s will, upon the death of Don McQueen Smith, his descendants over the age of 21 will divide the corpus of and any *207 accumulated income from the trust held during his lifetime per stirpes,[3] with the descendants of Mrs. Smith’s other children dividing the corpus and accumulated income per stirpes should Don McQueen Smith die leaving no descendants; similar reciprocal provisions apply to the trust terminating upon the death of Diane Smith Wendland.
The trust terminating upon the death of Dean Bergman Smith contains the following pertinent provisions:
“If upon the death of my son Dean Bergman Smith there are no descendants of him then living,, the trust shall terminate and the corpus, including any accumulated income, shall be paid over free and clear of trust to the descendants of my other children per stirpes. ...”
(emphasis added). Dean Bergman Smith died on or about August 21, 1995, leaving no descendants, and his death activated the termination provisions of the Dean Bergman Smith trust contained in Mrs. Smith’s will. The interpretation of the highlighted language is the critical issue in this ease.
FAB, on the advice of its counsel, notified the Wendland children and the Smith children that it would divide the property of the Dean Bergman Smith trust into two portions, after which one portion would be distributed equally among the three Smith children and one portion would be distributed equally among the four Wendland children. Under this plan, each child of Don McQueen Smith would receive a one-sixth share of the property of the Dean Bergman Smith trust (i.e., one-third of the one-half portion allotted to the Smith children) and each child of Diane Smith Wendland would receive a one-eighth share of the trust property (i.e., one-fourth of the one-half portion allotted to the Wendland children). The Wendland children protested this distribution plan, and have contended throughout this action that the termination provisions in Mrs. Smith’s will concerning the Dean Bergman Smith trust require that each of Mrs. Smith’s grandchildren receive equal portions (i.e., one-seventh of the entire property of the trust).
We now consider the trial court’s interpretation of the relevant trust termination provisions. The Wendland children contend that Mrs. Smith’s will mandates an equal distribution of one-seventh of the Dean Bergman Smith trust property to all of Mrs. Smith’s seven grandchildren. The Smith children, for their part, contend that the trial court’s interpretation is correct, and that this phrase mandates a division of the trust property into two halves, one half to be divided among the Smith children and one half to be divided among the Wendland children.
The principal Alabama opinion relied upon by the Wendland children is Taylor v. Cribbs, 174 Ala. 217, 56 So. 952 (1911). In that case, a will provided that a parcel of land at the death of the life tenant was “to be equally divided between the bodily heirs of Rosanah Fry and Margaret Jackson,” the testator’s daughters. Our supreme court construed this phrase to envision a devise per capita,[4], under which the seven children of one of the daughters and the five children .of the other daughter would take equal shares. The Taylor court interpreted the term “bodily heirs” in the will to mean “children,” and applied the principle of law that “[u]nder a gift to the children of several persons, whether it be to the children of A. and B., or to the children of A. and the children of B., or to A. and B. and their children, or to a class and their children, all take per capita in the absence of an intention to the contrary on the face of the mil." 174 Ala. at 219, 56 So. at 952 (emphasis added). The Taylor court found nothing in the will to support a different interpretation, and concluded that a per *208 capita distribution was intended by the testator.
 However, Taylor is not apt authority here. First, in Mrs. Smith’s will, the takers are described as “the descendants of my other children,” a term of art that “encompasses all offspring or lineal descendants to the most remote degree” and which itself “mandates a per stirpes distribution.” Shackelford v. Brown, 361 So.2d 552, 554 (Ala.1978). Additionally, we note that the presumption of a per capita gift relied upon by the Taylor court is at most a weak one, and “will yield to a very faint glimpse of a different intention.” Bethea v. Bethea, 116 Ala. 265, 270, 22 So. 561, 563 (1897); accord, Guesnard v. Guesnard, 173 Ala. 250, 257, 55 So. 524, 526 (1911) (presumption destroyed “on faint evidence”); Smith v. Ashurst, 34 Ala. 208, 210 (1859). Here, Mrs. Smith’s will specifically states that the payment of the Dean Bergman Smith trust property upon termination is to ■ be made “per stirpes,” which makes “abundantly clear” her intention that a stirpital distribution ■ result. Shackelford, 361 So.2d at 554. Thus, we conclude that Mrs. Smith’s will is not controlled by the presumption of a per capita gift set forth in Taylor that is applicable to class gifts to children of more than one person.
However, the mere inapplicability of Taylor does not alone resolve this appeal. If Mrs. Smith’s will may properly be interpreted as mandating a per stirpes distribution with the Wendland and Smith children, rather than their parents, serving as the “stocks” (i.e., as the taking representatives), then the initial distribution for the trust property would nonetheless be one-seventh to each of the Wendland and Smith children.[5] Indeed, the Wendland children aptly state the pertinent issue on appeal as “whether Mrs. Smith’s children or her grandchildren are to serve as the roots or stocks for division purposes.”
Mrs. Smith’s will contains no explicit indication whether she intended her. own children or her grandchildren to serve as the stocks with respect to the distribution of the Dean Bergman Smith trust property. Additionally, we have discerned no Alabama case-law that provides guidance as to the location of the stocks of a per stirpes distribution.
However, we are not without guidance in this area from other authorities. Section 303(1) of the Restatement of Property (1940) provides, in pertinent part, as follows:
“When a conveyance creates a class gift by a limitation in favor of a group described as the ‘issue of B,’ or as the ‘descendants of B,’ ... then, unless a contrary intent of the conveyor is found from additional language or circumstances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate on the date of the final ascertainment of the membership in the class, owning the subject matter of the class gift.”
Under this rule, a gift to the descendants of a particular person is treated as a gift to that person’s heirs under the prevailing law governing intestate succession. This rule would also apply in Mrs. Smith’s case,'where the will mandates distribution to the “descendants” of more than one person (namely, Diane Smith Wendland and Don McQueen Smith):
“[Sjection 304 of the Restatement, taken with section 311(1), extends the rationale of section 303(1) to a limitation to ‘the issue of B and the issue of C’ where ‘the rule stated in § 303 applies to determine the persons taking as issue of one or more of the designated persons,’ and B and C have a common parent or grandparent.”
Weller v. Sokol, 271 Md. 420, 429-30, 318 A.2d 193, 199 (Md.1974).
Section 303(1) of the Restatement is based upon the fundamental principle that a will must be construed with reference to laws *209 governing intestacy. A leading legal encyclopedia summarizes this precept: • ,
“There is no presumption from the fact that he made a will that the testator, meant its construction to be at all possible points inconsistent with the statute of distribution. Instead, the law favors that construction of a will which conforms most nearly to the general law of inheritance; and where the meaning of a will is ambiguous, a construction will be favored that will dispose of the property of the testator in the manner in which the law would have disposed of it had he died intestate. The foregoing principle is, of course, closely related to the general canon of construction that an intention to disinherit an heir will not be presumed.”
80 Am.Jur.2d Wills § 1139 (1975).
Alabama law is in accord with the fundamental principle underlying the Restatement. Our supreme court on a number of occasions has affirmed the doctrine that every doubt in a will must be resolved in favor of a testator’s heirs at law. See, e.g., Festorazzi v. First Nat’l Bank of Mobile, 288 Ala. 645, 656, 264 So.2d 496, 506 (1972) (citing cases); Wilson v. Rand, 215 Ala. 159, 160, 110 So. 3, 4 (1926) (noting presumption against disinheritance of a child of a deceased child). Moreover, in Baker v. Wright, 257 Ala. 697, 60 So.2d 825 (1952), our supreme court specifically relied upon the laws of descent and distribution in construing a will provision vesting the residue of the testator’s estate in his executor, “to be distributed and disposed of among my relatives living at my decease in such manner as shall be fitting and proper.” The Baker court interpreted the term “relatives” in relation to Alabama statutes governing intestate succession: “Since the will here under consideration does not plainly disclose a purpose to the contrary, the word ‘relatives’ ... is to be construed to mean those who would take under statutes of descent and distribution.” 257 Ala. at 704, 60 So.2d at 831.
Thus, in determining whether Mrs. Smith’s children or her grandchildren are the stirpital representatives, or stocks, we must consider which generation would serve as the stocks under Alabama’s statutes of descent and distribution in effect at the time of Mrs. Smith’s death. See Hoglan v. Moore, 219 Ala. 497, 501, 122 So. 824, 828 (1929). (validity, extent, and .nature of trust of personal property created under will depends upon laws of state of domicile at the time of the testator’s death); 95 C.J.S. Wills § 587f, at 724-25 (1957) (operative effect of will is to be determined when the parties’ rights accrue, i,e., at testator’s death). At the time of Mrs. Smith’s death (indeed, even at the time Mrs. Smith’s will was drafted), Alabama statutes concerning descent and distribution provided that real and personal property descended to children of the intestate, or their descendants, in equal parts. Ala.Code 1940 (Recompiled 1958), tit. 16, § 1(1); see also id. at § 10.
Notably, the 1940 Code mandated a per stirpes distribution of an intestate’s property and located the stocks in the first generation of issue, regardless of survival of any of the .members of that generation:
“Under the provisions of [Title 16, § 1], the lineal descendants, in equal degree, represent their ancestor; that is, the children of a deceased child, brother or sister of the intestate, are entitled to inherit, in equal parts, the same share that such deceased child, brother, or sister would have inherited, if living; the grandchildren of such deceased child, brother, or sister, taking in equal parts the same share that their parents would have inherited, if living.”
Ala.Code 1940 (Recompiled 1958), tit. 16, § 2 (emphasis added). Thus, in Henry v. Griffith, 242 Ala. 598, 7 So.2d 560 (1942), wherein the testatrix’s will divided her residuary estate into four parts — one part to the children of each of her deceased siblings per stirpes and one part to her sister “or should she be dead to her children or their descendants ... per stirpes” — our supreme court'concluded that her will “devise[d], and bequeathe[d] the residuary estate to the same persons and in the same shares they would have taken under the law of descent and distributions had there been no will.” 242 Ala. at 600-01, 7 So.2d at 562.
*210 Of course, Mrs' Smith’s will does not precisely duplicate the provisions of the will in Henry, and it does not expressly mandate a distribution as in intestacy, because there is no provision leaving any portion of the Dean Bergman Smith trust property to her own children. However, the beneficiaries of the trust are designated as the descendants of her other children. Under Sections 303(1), 304, and 311(l).of the Restatement as addressed above, this indicates an intended distribution of the Dean Bergman Smith trust property to Mrs. Smith’s grandchildren in such shares as they would have received under Ala.Code 1940, Title 16, §§ 1 and 2 if their lineal ancestors (Diane Smith Wendland and Don McQueen Smith) had died'intestate owning the trust property. In other words, the express terms of Mrs. Smith’s will do not negate the presumption, arising both from the provisions ,of the 1940 Code governing descent and distribution and from her use of the term “descendants,” that, she intended her own children to .serve as the stocks for the per stirpes distribution.
. We note that our conclusion is in accord with authorities from other states. See Lombardi v. Blois, 230 Cal.App.2d 191, 206, 40 Cal.Rptr. 899, 909 (1964) (where division or distribution is directed “per stirpes” absent any language directing contrary intent, family roots or stocks are to be found among ancestors of those persons who are to take property or estate rather than among takers themselves, irrespective of whether such ancestors were ever entitled to take); Weller, supra, 271 Md. at 432-33, 318 A.2d at 200-01 (where will provided that property “shall be divided ... among the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving per stirpes and not per capita,” stocks were to be found “among the children who left issue and descendants surviving, and not among the grandchildren”); In re Trust Estate of Dwight, 80 Hawai'i 233, 237, 909 P.2d 561, 565 (1995) (where trust provided that the corpus should be distributed among “the issue of my said adopted children ... in equal shares per stirpes,” the stocks are the adopted children and not the issue of the adopted children); In re Wyman, 308 N.W.2d 311, 316 (Minn.1981) (concluding that clear intent of testator’s statement that assets are 'to be “to the issue of [my child] by right of representation” is establishment of the testator’s child as the root generation); compare Bennett v. Lloyd, 245 Ga. 706, 707, 267 S.E.2d 3, 4 (1980) (language in will leaving remainder of testator’s estate “to my nieces and' nephews, per stirpes” held to mandate treatment of nieces and nephews as stocks; “[n]ieces and nephews are mentioned as primary legatees, with no reference to their parents.”).
Thus, we conclude that the trial court correctly interpreted Mrs. Smith’s will so as to mandate division of the Dean Bergman Smith trust property into two equal portions, representing the respective shares of the Wendland children and the Smith children, whereby the Wendland children are each to receive a one-fourth share of their portion and the Smith children are each to receive a one^third share of their portion. We therefore affirm the judgment of the trial court.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.

. For the convenience of the reader, we will refer to the trust corpus and the undistributed income of the Dean Bergman Smith trust as the “property’' of the trust.

. A codicil to this will, dated October 2, 1964, is not at issue on this appeal.

. “The term 'per stirpes’ is a technical term which means by roots or stocks or by representation .... It is presumed that such legal terms are used in their legal sense unless other language indicates otherwise." Wheeler v. First Ala. Bank of Birmingham, 364 So.2d 1190, 1197 (Ala.1978) (citing Black's Law Dictionary 1294 (4th ed.1951)).

. "A distribution per capita is an equal division of the property to be divided among the beneficiaries, each receiving the same share as each of the others, without reference to the intermediate course of descent from the ancestor. A distribution per capita is an equal distribution among the beneficiaries, each receiving the same share as the others.” 4 William Joseph Bowe and Douglas H. Parker, Page on the Law of Wills § 36.6, at 556(1961).

. Because each of the Wendland children and the Smith children was living at the time of Dean Bergman Smith's death, each would necessarily take to the exclusion of their own children under the stirpes distribution envisioned by Mrs. Smith's will. See Shackelford, supra, 361 So.2d at 554 ("The per stirpes distribution excludes the grandchildren because their mother, the ancestor through whom they would immediately take, if deceased, is living.”)